992 So.2d 579 (2008)
Cindy M. DUFRESNE
v.
Mark DUFRESNE.
Mark Dwight Dufresne
v.
Cindy Ann Mollere Badeaux, Wife of Mark Dwight Dufresne.
Nos. 08-CA-215, 08-CA-216.
Court of Appeal of Louisiana, Fifth Circuit.
September 16, 2008.
Rehearing Denied November 3, 2008.
*582 Robert L. Raymond, Destrehan, Louisiana, for Plaintiff/Appellee.
Rachel C. Marinovich, New Orleans, Louisiana, for Defendant/Appellant.
Panel composed of Judges, CLARENCE E. McMANUS, WALTER J. ROTHSCHILD, and MADELINE JASMINE.
MADELINE JASMINE, Judge Pro Tempore.
Appellant, Mark Dufresne, has appealed the trial court judgments awarding custody and visitation, interim child support, interim spousal support, and final spousal support. For the reasons that follow, we affirm in part, vacate in part, and remand.

*583 FACTS:

The parties, Mark Dufresne and Cindy M. Dufresne, were married on August 7, 1995. One child was born of this marriage, namely, Mia Dufresne, on April 10, 1996. The parties separated in December 2004 or January 2005. On March 26, 2006, Mrs. Dufresne filed a Petition for Divorce. On May 2, 2006, Mr. Dufresne filed a Petition for Divorce. The suits were consolidated. The parties were granted a divorce on October 4, 2006. At that time, an interim judgment on custody and visitation was signed. On February 27, 28, and March 1, 2007, the court held a hearing on custody, child support, spousal support, and the return of separate property.
At the conclusion of the hearing, the trial court rendered judgment awarding sole custody to Mrs. Dufresne, ordering supervised visitation until the completion of a treatment program pursuant to LSA-R.S. 9:362(7), child support in the amount of $2,240.00 per month, interim spousal support in the amount of $3,500.00 per month, final spousal support in the amount of $1,000.00 per month, granting the return of some separate property, denying Mr. Dufresne's Motion for Contempt, and awarding attorney's fees, court costs, and all other necessary counseling costs for the minor child pursuant to LSA-R.S. 9:367. On June 18, 2007, pursuant to Mrs. Dufresne's Motion for New Trial, this judgment was amended to correct the references "from the LSA-R.S. 9:362 and 364 statutes to the correct reference, LSA-R.S. 46:2136.1." The judgment was further amended to provide that all supervised visitation take place in the New Orleans metropolitan area, make the child support award interim, and to make the final spousal support award interim. The court issued a separate judgment awarding retroactive interim spousal support and retroactive child support, and awarding attorney fees and court costs to Mrs. Dufresne. On November 5, 2007, the trial court issued essential findings of fact and Reasons for Judgment. On July 12, 2007, Mr. Dufresne filed a Motion for Appeal, which was granted.

ASSIGNMENT OF ERROR NUMBER ONE:
In his first Assignment of Error, Mr. Dufresne argues the trial court erred in granting any relief pursuant to the domestic abuse statutes LSA R.S. 9:362, et seq and/or LSA-R.S. 46:2121, et seq. He contends that since Mrs. Dufresne did not plead abuse or seek relief under these statutes in her pleadings, he was denied notice and due process. He goes on to argue that Mrs. Dufresne repeatedly requested joint custody and a court may only grant relief that is sought by a party.
Mr. Dufresne acknowledges that this hearing was held to determine fault and custody. At the hearing, Mrs. Dufresne testified as to the tumultuous nature of the relationship. The parties began dating when Mr. Dufresne was married to his first wife and Mrs. Dufresne worked as Mr. Dufresne's secretary. This relationship went on for seven years prior to the marriage. The parties separated several times throughout the marriage. Mrs. Dufresne described numerous incidents of abuse, stating "he was abusive so many times I can't count." Mrs. Dufresne testified to one particular instance that occurred on her 30th birthday, when their daughter was four months old. Mr. Dufresne was upset because the fringe on the rug was "messed up" and the couple began to argue. Since the parties were to go out to eat with Mrs. Dufresne's family, she went to the phone to call them and let them know they were not going out to eat. Mr. Dufresne took the phone from her, and threw it at her, hitting her in the head. Mrs. Dufresne testified that he then threw *584 her towards the sofa and she landed on the floor. Medical records from a hospital emergency room were admitted to corroborate this testimony.
Mrs. Dufresne testified as to a time in 1997 or 1998 when Mr. Dufresne dragged her by the hair from "one side of the house to the other." She stated that on another occasion in 1998, he "body slammed her," held her throat and was strangling her. She testified that there were many times that he pinned her down and tried to strangle her. She testified that in 1999 or 2000 Mr. Dufresne put a gun to her head and told her he would kill both of them. Mrs. Dufresne testified that in 2002, he grabbed her by the arms and pushed her around, and then later that night forced her to have sexual relations. She also testified that in 2005 when they were separated she went to pick up Mia and the defendant got into the car and threw the garage remote at her, striking her in the head.
Mrs. Dufresne summarized the physical violence as occurring five to six times per year. A lot of it occurred around the holidays and special occasions. Mrs. Dufresne testified that on at least two occasions the police were called, but no police reports were introduced to corroborate this testimony. She explained that she loved her husband and he promised to get help. She waited to file for divorce after separating because she wanted things to get better. She did not want to get divorced. She further testified that Mr. Dufresne told her she was "crazy" and he would have her "committed." Mrs. Dufresne denied any history of psychiatric illness.
Mrs. Dufresne presented testimony of her son who corroborated the frequency of abuse and the incident in which Mrs. Dufresne was struck in the head with the telephone. He testified that he called the police on two occasions. Mrs. Dufresne's mother testified that she often saw bruises on Mrs. Dufresne, which were reported to be from fights with Mr. Dufresne, but Mrs. Dufresne never went into details of the fights. She further testified that Mrs. Dufresne came to stay at her house for a few days after some fights. She also testified that on two occasions, Mr. Dufresne ripped the phone out of the wall, so Mrs. Dufresne could not call her parents.
Mrs. Dufresne further testified that Mr. Dufresne was "mean to his own kids."
The trial judge questioned Mrs. Dufresne as to her size. She responded that she is 5'1" tall and weighed about 100 pounds during the marriage. She testified that Mr. Dufresne is 5'11" tall and weighed about 250 pounds during the marriage.
Mr. Dufresne denied physically abusing Mrs. Dufresne. He specifically denied the incident with the telephone. He admitted to screaming at Mrs. Dufresne and spitting on her. He testified that he called the police on one occasion because Mrs. Dufresne kicked in his car door. Mr. Dufresne testified that on one occasion Mrs. Dufresne threw a pot of grease containing French fries at him, striking him in the shoulder. He further testified that he sustained scratches to his face several times when he was "restraining" Mrs. Dufresne. He denied ever forcing Mrs. Dufresne to have sexual relations.
He described Mrs. Dufresne as being very demanding. In his opinion, the problems in the relationship stemmed from the fact that he dated Mrs. Dufresne while he was married to someone else and so Mrs. Dufresne never trusted him. Mr. Dufresne testified that he fired certain employees at Mrs. Dufresne's insistence in an effort to save his marriage. Mr. Dufresne further testified that Mrs. Dufresne did not like his mother and demanded that he *585 not speak to her. He also testified that he did 70% of the housecleaning and 65% of the laundry, while Mrs. Dufresne did very little cooking or cleaning.
Mr. Dufresne also testified as to numerous angry outbursts by Mrs. Dufresne. One incident involved Mrs. Dufresne destroying a television while another involved her breaking a trophy. Mrs. Dufresne admitted to these acts.
Mr. Dufresne developed bladder cancer during the marriage. He testified that Mrs. Dufresne never accompanied him to chemotherapy treatments and refused to go with him to the hospital for surgery. Mrs. Dufresne testified that she slept in a cot while he was in the hospital and was present for all of his treatments.
Mr. Dufresne's son, Wesley, testified that he lived with the couple in 1996 and 1997 and he never saw them hit each other or destroy any property.
Mr. Dufresne's daughter, Megan, testified that she lived with the couple for three years, from 2000-2003. She stated that they had arguments and she saw physical abuse. She testified that at times she saw scratches on her dad's face. While she testified that she had seen her father throw things down and break them, she denied seeing him throw anything at Mrs. Dufresne. Megan testified that she saw Mr. Dufresne "grab" Mrs. Dufresne and "hold her down."
The trial court awarded sole custody of Mia Dufresne to Mrs. Dufresne, with supervised visitation the last weekend of each month with Mr. Dufresne. The visitation is to take place in the New Orleans metropolitan area and is to be supervised by Mr. Dufresne's mother. The trial court further ordered Mr. Dufresne to complete an appropriate treatment program as defined in LSA-R.S. 9:362(7).
In his Reasons for Judgment the trial judge stated that he found the testimony of Mrs. Dufresne and that of Mrs. Dufresne's son and mother to be credible and that he did not credit the testimony of Mr. Dufresne. The trial judge found that Mr. Dufresne committed multiple acts of domestic violence against Mrs. Dufresne during the marriage including the act involving the telephone, dragging her by her hair, grabbing her by the arms and shoving her and later forcing her to have sex with him, throwing a garage controller at her and striking her in the head, body slamming her and attempting to strangle her, and holding a gun to her head and a knife to her throat.
A court of appeal may not set aside a judge or jury's factual finding unless that finding is manifestly erroneous or clearly wrong. Stobart v. State through Dep't of Transp. & Dev., 617 So.2d 880 (La.1993). When factual findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard of review demands great deference to the trier of fact, because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell v. ESCO, 549 So.2d 840 (La.1989). Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Id.
LSA-R.S. 9:362(7) is part of the Post-Separation Family Violence Relief Act. This statute defines "treatment program" as a course of evaluation and psychotherapy designed specifically for perpetrators of family violence, and conducted by licensed mental health professionals. The provisions of the Post-Separation Family Violence Relief Act become operative if the court finds that there has been *586 family violence and that there is a history of family violence. Michelli v. Michelli, 93-2128 (La.App. 1 Cir. 5/5/95), 655 So.2d 1342. A trial court's determination of domestic abuse is entitled to great weight and will not be disturbed on appeal absent a clear abuse of discretion. Stewart v. Stewart, 30,161 (La.App. 2d Cir.1/21/98), 705 So.2d 802, writ denied, 98-0748 (La.5/1/98), 718 So.2d 418. The testimony at the custody and fault hearing support the trial judge's finding that there is a history of family violence perpetrated by Mr. Dufresne. Thus, we find no error in the trial court's award of sole custody to Mrs. Dufresne with supervised visitation by Mr. Dufresne. Even if the domestic violence statutes were not applicable, the trial court may impose supervised visitation when warranted for the child's safety or if in the child's best interest. Harper v. Harper, 33,452 (La.App. 2d Cir.6/21/00), 764 So.2d 1186.
Additionally, the testimony indicated that although Mia loved and missed her father, it also revealed that there had been little visitation between Mia and Mr. Dufresne the six months prior to the hearing. Mr. Dufresne argues the trial court abused its discretion in not allowing him to exercise his visitation at his home in Houston, Texas.
Mrs. Dufresne testified that Mia does not like to spend the night away from home. Although she and Mr. Dufresne took overnight trips without Mia when they were married, Mia was left in the care of others at her own home, so that she did not have to stay at someone else's home.
Mrs. Dufresne testified that after they separated, Mr. Dufresne went to the house on most days after school when Mia got off the bus. He fixed her a snack and stayed there until Mrs. Dufresne got home from work. Mrs. Dufresne testified that after the separation, Mia went to sleep with Mr. Dufresne on one occasion when he was living at his son's house. Mia told her that she was crying and wanted Mr. Dufresne to call her. Mia told Mrs. Dufresne that Mr. Dufresne got a belt and told Mia that if she did not stop crying he would whip her. Mrs. Dufresne testified that Mr. Dufresne spent most of the summer of 2005 in Florida, coming in to visit Mia twice. He asked Mia to accompany him to Florida, but she did not want to go.
Mrs. Dufresne testified that after the hearing in October in which Mr. Dufresne was awarded visitation, he did not exercise the visitation. He did come to see Mia's performance in The Nutcracker, but flew into town just prior to the performance and flew out of town shortly thereafter.
Mr. Dufresne acknowledged that he had seen Mia very little in the last six months. He had not exercised his holiday visitation in the last two years. He testified that he had not been allowed a full day or weekend with Mia due to her extracurricular activities, including ballet, alter server, and birthday parties. Mr. Dufresne testified that prior to the three weeks before the hearing, he had difficulty getting in touch with Mia and she did not return his phone calls.
He testified that he would attend counseling in Houston, but would not come to New Orleans for counseling. Mr. Dufresne testified that he asked Mia to come to Florida and to Houston, but she refused. In his opinion, he needs to get Mia away from Mrs. Dufresne to have a relationship with her.
The best interest of the child is the sole criterion for determining a noncustodial parent's right to visitation. Anderson v. Brown, 34,474 (La.App. 2 Cir.2/28/01), 781 So.2d 744. Because each case depends on its own facts, the *587 determination regarding visitation is made on a case-by-case basis. Davis v. Davis, 494 So.2d 1315 (La.App. 2d Cir.1986). Great weight is given to the trial court's determination, and the court's judgment will not be overturned unless a clear abuse of discretion is shown. Id.
The judgment of the trial court clearly anticipates future visitation in Houston as the judgment ordered Mrs. Dufresne to seek appropriate counseling for Mia to enable her to engage in visits with her father in Houston. We see no abuse of discretion in the trial court ordering that the supervised visitation take place in the New Orleans area.
Mr. Dufresne further argues that the trial court erred in awarding attorney fees and costs to Mrs. Dufresne. LSA-R.S. 9:367 provides that attorney fees and costs necessitated by the family violence be paid by the party responsible for the family violence. While we find the trial court did not err in finding Mr. Dufresne committed acts of domestic violence, we are unable to determine from the record which attorney fees and costs were necessitated by this violence. Accordingly, the portion of the judgment awarding attorney fees is vacated and this matter is remanded for a determination of the amount of attorney fees and costs incurred by Mrs. Dufresne as a result of the domestic violence perpetrated by Mr. Dufresne.
Mr. Dufresne argues that he was denied notice and due process because Mrs. Dufresne never mentioned any allegations of domestic abuse in her pleadings. However, Mr. Dufresne was fully aware that one purpose of the hearing was a determination of fault in the breakup of the marriage. Mrs. Dufresne contends the marriage was broken up by Mr. Dufresne's continual abuse. The first witness of the hearing was Mrs. Dufresne's son who testified as to numerous violent incidents of abuse perpetrated by Mr. Dufresne on Mrs. Dufresne without any objection by Mr. Dufresne's counsel. The second witness to testify at the hearing was Mrs. Dufresne's mother, who testified as to bruises on Mrs. Dufresne that were the result of fights with Mr. Dufresne. Again, there were no objections by Mr. Dufresne's counsel. Further, Mr. Dufresne's counsel fully cross-examined each witness and Mr. Dufresne presented testimony of himself and his children denying the allegations of physical abuse. Thus, we find Mr. Dufresne was not denied due process.
Mr. Dufresne further argues the trial court awarded relief that was not requested. After judgment was rendered Mrs. Dufresne filed a motion to amend the pleadings to conform with the evidence. LSA-C.C.P. art. 1154 provides: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading." As stated above, the hearing opened with two witnesses who testified as to the physical abuse of Mrs. Dufresne by Mr. Dufresne with no objection from Mr. Dufresne's counsel. Article 1154 allows for an amendment even after judgment is rendered. Thus, we find the trial court did not err in awarding relief not specifically prayed for in the initial pleadings.

ASSIGNMENT OF ERROR NUMBER TWO:
In his second Assignment of Error, Mr. Dufresne argues the trial court erred in awarding child support in excess of the statutory guidelines of LSA-R.S. 9:315, et seq. He contends that the trial judge incorrectly found the parties' income exceeded the guidelines. Mrs. Dufresne responds that this is an interim award and *588 the trial court was permitted to deviate from the guidelines.
In listing essential findings of fact in its reasons for judgment, the trial court found Mrs. Dufresne's income was $2,500.00 per month and Mr. Dufresne's income is $14,583.00 per month. However, in awarding interim child support, the trial court stated that the parties combined income exceeds the highest figure on the "child support scale". LSA-R.S. 9:315.19 provides a schedule for basic child support obligation up to a combined income of $20,000.00 per month. Since the parties' income listed as an essential finding of fact by the trial court is within the legislative schedule for basic child support obligation, but the trial judge later found the combined income exceeds the schedule, this matter is remanded to the trial court for a determination of the parties' combined income. On remand, the trial court is ordered to make an award of child support based on that income determination or to provide reasons for deviating from the guidelines as provided for in LSA-R.S. 9:315.1.

ASSIGNMENT OF ERROR NUMBER THREE:
In this Assignment of Error, Mr. Dufresne argues the trial judge committed manifest error in granting interim spousal support in excess of any proven expenses and/or lifestyle of the parties during the marriage. He contends that the couple shared a "relatively simple lifestyle" during the marriage consisting of a mortgage note of slightly over $600.00 per month, vacations at the Florida panhandle and Disneyworld, and dining out at moderate restaurants such as Houston's and Olive Garden. He concludes the only evidence to support Mrs. Dufresne's request for interim support was her "overinflated" income and expense sheet. Mrs. Dufresne responds that the award was within the trial court's discretion and should be affirmed.
A court may award an interim periodic support to a spouse in a divorce proceeding based on the needs of that spouse, the ability of the other spouse to pay, and the standard of living of the spouses during the marriage. La. C.C. arts. 111 and 113. Interim spousal support is designed to assist the claimant spouse in sustaining the same style or standard of living that he or she enjoyed while residing with the other spouse, pending the litigation of the divorce. Derouen v. Derouen, XXXX-XXXX (La.App. 3 Cir. 2/2/05), 893 So.2d 981. Because the trial court is vested with much discretion in determining awards of spousal support, these determinations will not be disturbed absent a clear abuse of discretion. McDermott v. McDermott, 32,014 (La.App. 2 Cir. 6/16/99), 741 So.2d 186.
Mrs. Dufresne testified that during the marriage they lived in a large house worth about $800,000.00. This was Mr. Dufresne's separate property. There were murals painted on the walls of the house costing $15,000.00. In addition, the couple owned a house on the beach in Florida worth over two million dollars, which was furnished with expensive artwork. Mrs. Dufresne testified that she drove a 2003 Lexus SUV, which was purchased new, costing over $70,000.00. The couple took vacations to Las Vegas, Aruba, and Bora Bora, and family vacations to Vail, Disneyworld, and Hawaii.
Mr. Dufresne admitted to owning and driving several expensive cars during the marriage. He estimated that during the marriage, they spent about $3,000.00 per month. He acknowledged taking various vacations, but testified that most of these were to the Florida panhandle.
*589 Mrs. Dufresne testified that she has a high school diploma and does not have any further training or education. She works as a secretary. She submitted documents to show her gross monthly income is $2,500.00, with a net monthly income of $2,050.42.
Mr. Dufresne testified that his monthly income is $14,583.00. He testified that he sold his company, Datachem for $2,600,000.00 and sold land for $3,790,109.53. He estimated his tax liability on these transactions to be $1,500,000.00. He purchased a house in Houston for $1,400,000.00 in cash. He also purchased $2,500,000.00 in bonds, which he estimates he will not receive income on for 18-24 months. He submitted tax returns for 2003 and 2004. At the time of the hearing there was ongoing discovery related to Mr. Dufresne's income.
Given the lifestyle of the parties during the marriage and the disparity in earning capacity of the parties, we see no abuse of discretion in the award of interim spousal support.

ASSIGNMENT OF ERROR NUMBER FOUR:
In his fourth Assignment of Error, Mr. Dufresne argues the trial court committed manifest error in finding Mrs. Dufresne free from fault and granting permanent spousal support. Mrs. Dufresne contends this award was well within the trial court's discretion.
The trial court has vast discretion in matters regarding determination of fault for purposes of precluding final periodic support. The trial court's finding of fact on the issue of fault will not be disturbed unless manifestly erroneous. Gremillion v. Gremillion, 39,588 (La.App. 2 Cir. 4/6/05), 900 So.2d 262. In its Reasons for Judgment, the trial court found the primary cause for the breakup of the marriage was Mr. Dufresne's acts of domestic abuse towards Mrs. Dufresne. Based on the extensive testimony regarding numerous incidents of physical abuse and the trial court's discretion to credit the testimony of Mrs. Dufresne over that of Mr. Dufresne, we find no error in the trial court's determination of fault.
Once freedom from fault is established, the basic tests for the amount of spousal support are the needs of that spouse and the ability of the other spouse to pay. La. C.C. arts. 111, 112. The award for final periodic spousal support is governed by La. C.C. art. 112, which requires the court to consider all relevant factors. Final periodic support is awarded to a former spouse in need and is limited to an amount sufficient for maintenance as opposed to a continuation of an accustomed style of living. Mizell v. Mizell, 37,004 (La.App. 2d Cir.3/7/03), 839 So.2d 1222. The trial court awarded Mrs. Dufresne $1,000.00 per month in final spousal support for a period of sixty months, reasoning that this would allow Mrs. Dufresne time to acquire additional education and/or training to improve her earning capacity.
The record indicates that Mrs. Dufresne had worked as a secretary; however, there was no testimony or other evidence indicating that Mrs. Dufresne wanted to pursue additional education and/or training. Further, the record does not indicate that the trial judge considered the needs of Mrs. Dufresne or any other relevant factors in making this award. For this reason, the portion of the judgment awarding final spousal support is vacated. This matter is remanded for a determination of an award of final periodic spousal support considering all relevant factors, including the need of Mrs. Dufresne.

*590 ASSIGNMENT OF ERROR NUMBER FIVE:

In his fifth Assignment of Error, Mr. Dufresne argues the trial court erred in failing to find Mrs. Dufresne in contempt of court for denial of visitation. In October 2006, the trial court ordered visitation of the child with Mr. Dufresne at his home in Houston for the weekend of December 15 through December 17, 2006. The judgment provided that the court would review the progress of the scheduled visits in the metropolitan area at a status conference prior to the weekend Houston visit.
Mr. Dufresne filed a Rule for Contempt against Mrs. Dufresne for her failure to allow Mia to visit Mr. Dufresne in Houston the weekend of December 15. Mrs. Dufresne testified that she thought after Mr. Dufresne visited with Mia in New Orleans, she had to go back to talk to the judge to determine if she was going to go to visit Mr. Dufresne in Houston. Mrs. Dufresne testified that she brought Mia to the courthouse, but she did not talk to the judge. She explained that Mr. Dufresne booked flights for her and Mia to fly to Houston on Friday evening at 6:50 p.m. She explained that she works until 4:00 p.m. and could not have made the flight. She further testified that Mr. Dufresne booked a hotel room in an area of Houston that she was not familiar with and was located near Mr. Dufresne's house. She explained that she wanted to stay in an area of Houston that was familiar to her and "because of past actions" with Mr. Dufresne she did not feel comfortable staying in an unfamiliar area. Mrs. Dufresne further testified that she called Mr. Dufresne to tell him they were not coming and that Mia did not want to go.
A trial court is vested with great discretion to determine whether circumstances warrant holding a party in constructive contempt of court pursuant to La. C.C.P. art. 224 for willful disobedience to a court order. Alagdon v. Guertin, 97-0235 (La.App. 4 Cir. 10/1/97), 701 So.2d 480, writ denied, 97-2400 (La.12/12/97), 704 So.2d 1201. In order to find a party in contempt of court, the trial court must find that the party intentionally, knowingly and purposely acted or failed to act. Id. A court may not hold a party in contempt unless it finds that the party's reasons for violating the order were without justifiable excuse. Id.
In denying the Motion for Contempt, the trial court stated that he credited Mrs. Dufresne's explanation as to why the visit did not occur. Mr. Dufresne does not deny that the October 2006 judgment provided for a status conference; he simply argues Mrs. Dufresne should be held in contempt for her failure to travel with the child to Houston. Given the portion of the judgment stating there was to be a status conference prior to the Houston visit, and Mrs. Dufresne's testimony that she presented the child for the conference, but was unable to see the judge, we find no error in the trial court's finding that Mrs. Dufresne was not in contempt of court.

ASSIGNMENT OF ERROR NUMBER SIX:
In this Assignment of Error, Mr. Dufresne argues the trial court erred in failing to apply all credits for payments made towards support. In particular, Mr. Dufresne contends he should be credited for the private school tuition he paid in the amount of $3,915.00. During the hearing, the trial judge stated he was not giving Mr. Dufresne credit for private school tuition because it was not included in the prior calculations.
Apparently, the trial court did not include private school tuition in the prior calculation for child support and for this *591 reason, he did not allow a credit for the tuition. A trial court's decision as to whether to include private school tuition in the child support obligation is a factual determination, not to be disturbed in the absence of abuse of discretion. Robichaux v. Robichaux, 2004-162 (La.App. 3 Cir. 6/2/04), 879 So.2d 279. We see no abuse of discretion in the trial court's failure to credit Mr. Dufresne for payment of private school tuition.

CONCLUSION:
For the foregoing reasons, the portions of the trial court's judgment awarding attorney's fees and costs, child support, and final spousal support are vacated; all other portions of the trial court's judgment are affirmed. This matter is remanded to the trial court for proceedings consistent with this opinion.
AFFIRMED IN PART; VACATED IN PART; REMANDED.