FREDERICKA HOMBERG WICKER, Judge.
lijThis is the second appeal in a domestic matter in which the former spouse, Mark Dufresne, appellant, now appeals the April 16, 2010 judgment that followed this Court’s remand. Mr. Dufresne specifies as errors the trial court’s ordering Mr. Dufresne to pay final child support in the amount of $3000 per month; the trial court’s alleged noncompliance with this Court’s remand order; the trial court’s denying his request that tuition expenses be paid by Mr. Dufresne directly; and, the trial court’s awarding final periodic spousal support to Ms. Dufresne, appellee, in the amount of $1025 per month for a term of 60 months. Mr. Dufresne also asks this court to reverse the portion of the judgment that requires the parties to exchange income information on a yearly basis. For the reasons that follow, we affirm.

Facts

Mark Dufresne and Cindy M. Dufresne were divorced in 2006. One child was born of this marriage, namely, Mia Dufresne, on April 10, 1996. In 2007, the trial court rendered judgment in pertinent part awarding sole custody to Ms. | ¡¡Dufresne, ordering supervised visitation to Mr. Du-fresne until he completed a treatment program pursuant to domestic abuse statutes, child support in the amount of $2,240.00 per month, interim spousal support in the amount of $3,500.00 per month, final spousal support in the amount of $1,000.00 per month for 60 months, and attorney’s fees, court costs, and all other necessary counseling costs for the minor child pursuant to the domestic abuse statutes. On June 18, 2007, the trial judge granted Ms. Dufresne’s Motion for New Trial and amended the judgment, with among other things to provide that all supervised visitation take place in the New Orleans metropolitan area, to make the child support award interim, and to make the final spousal support award interim. In a separate judgment, the court awarded retroactive interim spousal support and child support. Dufresne v. Dufresne, 08-215, pp. 2-3 (La.App. 5 Cir. 9/16/08), 992 So.2d 579, 583, writ denied, 08-2843 (La.12/17/08), 996 So.2d 1123.
This Court affirmed the judgment in part, vacated it in part, and remanded the matter with instructions. We found no error in the trial court’s determinations in the following respects: (1) the award of sole custody to Ms. Dufresne with supervised visitation to Mr. Dufresne in New Orleans; (2) the award of interim spousal support in the amount of $3,500 per month given the lifestyle of the parties during the marriage and the disparity in earning capacity of the parties; (3) the finding that Ms. Dufresne was free from fault; (4) the finding that Ms. Dufresne was not in contempt of court; and, (5) the refusal to credit Mr. Dufresne for payment of private school tuition. However, we vacated the portions of the trial court’s judgment which awarded attorney’s fees and costs, child support, and final spousal support. We remanded the matter with instructions as to the vacated portions of the judgment. Dufresne, supra at 17, 992 So.2d at 590.
| ¿Pertinently, we ordered the trial court to make an award of child support based on a determination of the parties’ combined income or to provide reasons for deviating from the guidelines as provided for in La.R.S. 9:315.1. We also remanded the matter for a determination of an award of final periodic spousal support considering all relevant factors, including Ms. Dufresne’s need. Dufresne, supra, at 14-15, 992 So.2d at 589.
Upon remand, the former trial judge signed a pleading styled “REASONS FOR *753 DEVIATION FROM GUIDELINES.”[1] Thereafter, the parties filed various motions. These, along with the remand matters, were heard at an evidentiary hearing before the current judge on September 29, 2009.
On April 16, 2010, the trial judge rendered judgment and provided extensive reasons. On appeal, Mr. Dufresne challenges those portions of the judgment awarding final child support to Ms. Du-fresne in the amount of $8000 per month, the yearly exchange of financial information, the denial of his rule to reduce child support or alternatively to pay expenses directly, the award of final spousal support to Ms. Dufresne in the amount of $1025 per month payable for a term of 60 months, and the trial judge’s decree that the court satisfied this Court’s remand on the issue of child support when the prior judge rendered his reasons for deviating from the guidelines.

Manifest Error

Appellant argues that the trial judge was manifestly erroneous in various respects, asking this court to reverse the award of child support and calculate an award based upon the evidence.
| sMr. Dufresne argues that the trial judge erred by undertaking a post-trial independent investigation, when the trial judge indicated that she was taking judicial notice of alleged real estate transactions involving Mr. Dufresne.
In separate reasons for judgment, the trial judge gave numerous reasons for deviating from the child support guidelines and awarding child support in the amount of $3000 per month. Mr. Dufresne complains about two footnotes in that discussion. Both footnotes state in part that the court took “judicial notice from public, governmental deed and assessment records readily available from reliable sources” that Mr. Dufresne recently purchased property in Texas and property in New Orleans; the 2009 assessment of the Texas property was almost $2 million; and the New Orleans property possibly generated rental income given that Mr. Dufresne resided in Texas and had a vacation home in Florida.
Mr. Dufresne asserts that the trial judge erred by taking judicial notice of alleged real estate transactions that were not in evidence and for which judicial notice was inappropriate. Furthermore, he contends that the trial judge took notice of the alleged facts without notice to either party and without even identifying the source of the information or otherwise establishing its reliability. We agree.
In order for the trial court to take judicial notice of an adjudicative fact, such as those set out as purported facts or conclusions in the footnotes, the fact must be “one not subject to reasonable dispute in that it is either ... [generally known within the territorial jurisdiction of the trial court; or ... [cjapable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.” La.C.E. art. 201(B)(1) and (2). Courts may properly take judicial notice only of facts that may be regarded as forming part of the common knowledge of every person of ordinary understanding and intelligence. State Block, Inc. v. Poche, 444 So.2d 680, 684 (La.App. 5 Cir. 1984). Accordingly, the | ^alleged real estate transactions and values as well as the potential that a New Orleans property could be used for rental income are not *754 matters about which judicial notice may be taken.
However, reasons for judgment by a trial judge are not controlling and do not constitute the judgment of the court. The trial court’s reliance on “evidence” that was not introduced at trial does not preclude our finding that there is no abuse of discretion in deviating from the guidelines and awarding final child support in the amount of $3000. A judgment and reasons for judgment are two separate and distinct documents. La. C.C.P. art. 1918. Appeals are taken from the judgment, not the written reasons for judgment. See: La.C.C.P. arts. 2082, 2083; Greater New Orleans Expressway Com’n v. Olivier, 02-2795, pp. 3-4 (La.11/18/03), 860 So.2d 22, 24 and authorities cited therein. Where the trial court’s reasons for judgment are flawed, but the judgment is correct, the judgment controls. Premier Games, Inc. v. State, Dept. of Public Safety and Corrections, Video Gaming Division, 99-0624, p. 5, n. 4 (La.App. 1 Cir. 5/12/00), 761 So.2d 707, 711, n. 4 (citations omitted). Accord: Smith v. Smith, 08-575, p. 14 (LaApp. 5 Cir. 1/12/10), 31 So.3d 453, 462. Reasons for judgment set forth the basis for the court’s holding and are not binding. Id. Moreover, we examine the result of the judgment rather than the reasons.[2] For the reasons that follow, we conclude that the result is correct.
This Court instructed the trial court that on remand, it make an award of child support based on the parties’ combined income or to provide reasons for deviating from the guidelines as provided for in La. R.S. 9:315.1. Dufresne, supra, at 11-12, 992 So.2d at 587-88.
|7We conclude that the issue of whether or not the former trial judge complied with this Court’s remand order is moot in light of the fact that the current trial judge more than adequately complied with that order.
We now turn to Mr. Dufresne’s arguments the trial court erred in deviating from the guidelines. In this regard, Mr. Dufresne argues that the trial judge failed to make an actual determination of Mr. Dufresne’s income and erroneously deviated from the child support guidelines.
 An award of child support is entitled to great weight and will not be disturbed on appeal absent an abuse of discretion. Duffel v. Duffel, 10-274, p. 3 (La. App. 5 Cir. 11/9/10), 54 So.3d 675, 676, citing Lambert v. Lambert, 06-2399 (La. App. 1 Cir. 3/23/07), 960 So.2d 921, 924. There is a rebuttable presumption that the amounts set forth in the child support guidelines are proper. Id. at 3-4, 54 So.3d at 676, citing La.R.S. 9:315.1(A). However, the trial court may deviate from the guidelines “if their application would not be in the best interest of the child or would be inequitable to the parties.” Id. at 4, 54 So.3d at 676, quoting La.R.S. 9:315.1(B)(1). If the trial court deviates, it must give specific oral or written reasons for the deviation, including a finding as to the amount of support that would have been required under a mechanical application of the guidelines and the particular facts and circumstances that warranted a deviation from the guidelines. Id., citing Barton v. Barton, 05-1190 (La.App. 1 Cir. 6/9/06), 938 So.2d 779, 781. La.R.S. 9:315.17 provides that deviations from the guidelines are not to be disturbed on appellate review in the absence of manifest error. Id.
*755 The overriding factor in determining the amount of support is the best interest of the children. Id., citing Sampognaro v. Sampognaro, 41,664 (La.App. 2 Cir. 2/14/07), 952 So.2d 775, 778. Where, it was financially possible, the children who reside with their mother are entitled to the same standard of living as if they reside with their father. Langley v. Langley, 07-754, p. 6 (La.App. 4 Cir. 3/26/08), 982 So.2d 881, 885, writ denied, 08-873 (La.6/20/08), 983 So.2d 1274; Duffel, supra, at 4, 54 So.3d at 677. The trial court is required to consider the “totality of the circumstances” when determining the amount of child support. Id. at 5, 54 So.3d at 678 (citations omitted).
When the trial judge deviates from the guidelines, the record must include oral or written reasons that support the deviation and that are based on the record. State, Dept. of Social Services ex rel. D.P. v. Pineyro, 08-1213, p. 5 (La.App. 5 Cir. 4/7/09), 13 So.3d 193, 195, citing Aydelott v. Aydelott, 42,161 (La.App. 2 Cir. 5/9/07), 957 So.2d 350. The trial court’s failure to follow the mandatory procedure for deviation set forth in La. R.S. 9:315.1, constitutes legal error which precludes review of the deviation under the manifest error standard of review. Id. at 5, 13 So.3d at 195-96.
In this case, although the trial judge decreed that the court satisfied this Court’s remand order when the prior judge rendered his reasons for deviation from the guidelines, the current trial judge nonetheless performed her own calculation of child support following the mandatory procedure for deviation set forth in La. R.S. 9:315.1. Therefore, it is of no moment whether the prior trial judge’s reasons satisfied this Court’s remand order.
Importantly, the current trial judge did undertake a mechanical application of the guidelines based on three income scenarios that were attached to her reasons. In calculating child support, the trial judge is required to use the worksheet A reproduced in La.R.S. 9:315.20 or a substantially similar form adopted by local court rules. La.R.S. 9:315.8(5). In this case, the trial judge used the appropriate worksheet.
19The father’s monthly gross income on the three worksheets ranged from $15,410 to $23,370, with the mother’s being fixed at $2,971. The court based the father’s income on three calculations: the father’s 2008 non-capital gain tax return income, the father’s 2006-2008 average non-capital gain tax income, and the father’s 2005 through 2008 non-capital gain tax income. The trial judge included the tax-free interest from municipal bonds. Two of these calculations exceeded the highest sum shown on the schedule in R.S. 9:315.19. One of the statutory reasons for deviating from the guidelines is that the combined adjusted gross income of the parties exceeds the highest level specified in the schedule. R.S. 9:315.1(C)(l)(b). When the combined adjusted gross income exceeds the schedule, the court “[s]hall use its discretion in setting the amount of the basic child support obligation in accordance with the best interest of the child and the circumstances of each parent as provided in Civil Code Article 141, but in no event shall it be less than the highest amount set forth in the schedule.” R.S. 9:315.13(B).
Another statutory reason for deviating from the guidelines is “[a]ny other consideration which would make application of the guidelines not in the best interest of the child or children or inequitable to the parties.” R.S. 9:315.1(0(8).
It is evident that the trial judge considered both statutory reasons for deviating from the guidelines.
Mr. Dufresne testified his income during the marriage, as indicated by the adjusted *756 gross income on his 2004 tax return was around $276,127. He earned that amount as President and CEO of Data Chem. According to Mr. Dufresne, Ms. Dufresne wanted him to sell Data Chem because she wanted him to spend more time with her. So, he reluctantly sold the company. He stated that he would still be in business today if not for her insistence. Therefore, in 2005, he sold his 52% interest in the company and the real estate to Clarient for $5.2 million. Since then, |1flhe receives royalty payments from Clarient for his consulting work of 18 to 20 hours per week. That royalty agreement is part of a five-year non-compete agreement with Clarient. The royalty income is based on a percentage of Clarient’s gross income or earnings. In the beginning he was paid 4% of the gross but he now receives 2% of the gross. Mr. Dufresne’s adjusted gross income as reported on his 2005, 2006, 2007, and 2008 federal income tax returns was over $2 million, $159,784, $108,216, and $83,374, respectfully. Those figures on the 2006 to 2008 tax returns do not include the approximate $101,000 in interest from tax-exempt municipal bonds. At the time of trial Mr. Dufresne had approximately $2.6 million in tax-free municipal bonds.
Trial occurred in September 2009. Mr. Dufresne testified that the approximate amount of monthly income he received from Clarient in the first four months of 2009 was $3500. When asked whether this was the figure he continued to make with Clarient at the time of trial, he stated that at times the amount varied; it could range from $2500 to $6500. He estimated that in 2010 he would probably have at least $150,000 to a couple of hundred thousand dollars of tax-free interest from the municipal bonds.
Mr. Dufresne explained that when he sold the company, he invested some of proceeds in AAA rated bonds; he purchased a house; and, he placed the remainder in the stock market. At one time he had a significant stock portfolio but about 15 or 16 months ago the stock market crashed. His portfolio has decreased 60%. Thus, he no longer has the $7000 to $8000 per month he was receiving from stocks.
Among his assets are his mortgage-free home in Texas where he lives with his current wife. That house is on the market for a price just under $1.7 million. After he purchased the Texas house, he sold his mortgaged home in Ormond for f ,$850,000. He testified he spent the sale proceeds of approximately $700,000. He also has a house in Florida on the beach in Panama City. The Florida house, which has a mortgage of $810,000, is worth $1.9 million. Therefore, the Florida house has equity of $1.1 million.
"When Ms. Dufresne’s counsel asked whether his net worth on the date of trial was approximately $10 million, he replied that he did not think it was any of counsel’s business. After overruling Mr. Du-fresne’s objection to the question, Mr. Du-fresne answered that his current net worth was probably $5 million. Then, in two or three years it would probably be $8 million.
Mr. Dufresne admitted that he had the benefit of the approximate $101,000 in tax-free interest from the municipal bonds. But he maintained that that amount should not be viewed as income. He explained that for tax reasons, he is unable to withdraw the yearly interest — he can only borrow the funds at 2-1/2%. He has borrowed the interest funds. However, even when he borrows the money, he is still earning interest. He earns 4.8% interest. If he does not withdraw the money until the specified four, seven, or eight year time period, he could earn almost 10 to *757 11% interest because he would not have to pay federal or state taxes.
In determining the child support award, the trial judge expressed difficulty in determining Mr. Dufresne’s income as well as concern that Mr. Dufresne was manipulating assets. Thus, the trial judge made a credibility determination. The trial court’s credibility determinations regarding a party’s sources of income are entitled to great weight. Sporl v. Sporl, 00-1321 (La.App. 5 Cir. 5/30/01), 788 So.2d 682, 684, writ denied, 01-1926 (La.10/12/01), 799 So.2d 506 (citation omitted).
The trial judge also determined that, where it was financially possible, the child was entitled to enjoy the same standard of living she would enjoy were she | ^living with the non-custodial parent. See, Langley, supra. The evidence at trial established that the standard of living that the child enjoyed with her mother is modest in relation to that enjoyed by her father. For example, the mother’s financial constraints prevented the child from going on two expensive school trips in the school year, forcing her to choose between one of these. Additionally, Ms. Dufresne testified that the child had formerly enjoyed taking vacations. The trial judge further noted that Mr. Dufresne spent more on property taxes for his properties, according to his 2008 tax return — $52,279—than child support awarded by the court: $3000 per month.
It appeared to the district court that in an effort to reduce his child support obligation, Mr. Dufresne was able to manipulate his actual net income in order to minimize it. Mr. Dufresne’s placing around $2.6 million in tax-exempt bonds presents a situation wherein Mr. Dufresne is able to borrow on the $100,000 or more interest, losing only some of the return on interest, and at the same time manipulate a change in net income on his taxes. Based upon all the evidence, including Mr. Dufresne’s accumulation of substantial assets, the trial court could have reasonably made a credibility determination that Mr. Dufresne deliberately manipulated the financial disclosure of his income to minimize his child support obligation. There is sufficient evidence to support the trial court’s finding that Mr. Dufresne enjoyed a substantially higher income than was disclosed as part of his financial disclosures. It was reasonable for the court to determine that spending on property taxes alone exceeded the $3000 child support order. Mr. Dufresne also testified, without explanation, that in a few years he would be worth probably $8 million. Mr. Dufresne’s manipulating and minimizing his net income is a reason for deviating from the guidelines.
| iSIn deviating from the child support guidelines, the trial court clearly took into account the totality of the circumstances. Applying the above-cited jurisprudence, we find no manifest error in the amount of support awarded by the trial court.[3]
Mr. Dufresne also argues that the trial judge erred in its child support award by including $450 a month in recreational expense on the basis that the evidence supports an amount of $150 at most. He bases this argument on Ms. Dufresne’s December 2007 response to an interrogatory.
Ms. Dufresne testified that she attributed $450 per month for Mia. She explained that these expenses included ex *758 penses for Mia’s functions at school, such as dancing. It also included movies and vacations. In calculating recreational expenses, she considered expenses that she had been paying over the years, even though she could no longer afford these because of her current financial situation. For example, Mia is now limited regarding taking vacations in comparison to the number she once took.
Ms. Dufresne testified that there were two eighth grade school trips planned to Washington D.C. and Florida, respectfully. The Florida trip costs approximately $760 per student plus money for food and other incidental trip activities. In addition, it is mandatory that a parent accompany the child, doubling the expense. Ms. Dufresne could not afford to pay for both trips. So, Mia had to make a choice. Mia chose the Florida trip. Also, Ms. Dufresne took Mia to Disney World two years ago for a cost of $3,000.
During cross-examination, Ms. Dufresne was referred to an interrogatory she answered in December 2007. Through that interrogatory, counsel asked her to 114provide an itemized accounting of every expenditure made by her on behalf of the minor child on a monthly basis. The document was introduced into evidence. According to the document, Ms. Dufresne objected to the interrogatory because, among other things, Mr. Dufresne was already in possession of certain information relative to child support. Subject to that objection, Ms. Dufresne’s written answer provided information on nine items, none of which included such things as movies vacations, and household expenses. The list consisted of varsity uniforms; tuition for dancing from August to December 2007; March, April, and May after care charges at the school; club dues; school uniforms from August to September 2007; books in September 2007; medical co-pay in July 2007; and, prescription costs in July 2007.
On appeal, Mr. Dufresne argues that the total amount calculated for these limited items results in a total of $1511 for a 10-month period or $151 per month. He attributes these items to the total amount that Ms. Dufresne pays for extracurricular activities for Mia.
Ms. Dufresne, however, calculated the $450 expense on the basis of Mia’s former expenditures rather than on the basis of her now-limited income. The trial judge awarded child support not on the basis of the mother’s actual expenditure but rather on the basis of the child’s standard of living she would enjoy were she living with the non-custodial parent. See, Langley, supra. Since we find no abuse of the trial judge’s discretion in deviating from the child support guidelines, we likewise find no abuse in basing child support on the same standard of living the child would enjoy were she living with the non-custodial parent.
In the context of his argument concerning the specification of error that the trial court was manifestly erroneous in basing its child support determination on an independent post-trial investigation, Mr. Dufresne asks this court to reverse the | ^portion of the judgment that requires the parties to exchange income information on a yearly basis. He stated that the order was never prayed for and was not appropriate or allowable under the provisions of La.R.S. 9:315 et seq. Ms. Dufresne responds that the ordered exchange of income information ensures reasonable compliance by the parties as it relates to Mia’s present and future needs.
Before trial, the trial judge and the parties specifically clarified the issues that would be heard. Those issues did not include a rule to order the parties to ex *759 change income information on a yearly-basis. Neither party, in their pleadings, asked for such relief.
During trial, Ms. Dufresne’s counsel informed the court that there was a judgment directing Mr. Dufresne to produce certain documents to Ms. Dufresne since March 2007 and she still did not have all of those. However, the day before trial, she had received the 2005 tax return. Mr. Dufresne’s counsel responded that the 2005 tax return was produced the week before trial.
The trial judge ordered both parties, not only Mr. Dufresne, to provide each other with financial information. The trial judge was evidently concerned about the best interest of the child in being maintained in a standard of living were she living with the non-custodial parent. Therefore, the trial judge effectively ordered an accounting from each of the parents to assure that the child would be maintained at that standard of living.
Although the accounting was not expressly requested by the parties nor provided for in La.R.S. 9:315 et seq., “[a] court possesses inherently all of the power necessary for the exercise of its jurisdiction even though not granted expressly by law.” La. C.C.P. art. 191. In Baudoin v. Hebert, 463 So.2d 78, 80 (La.App. 3 Cir. 1985), the Third Circuit found no authority for a court to require the posting of security to assure compliance with a custody judgment. Nevertheless, 11fithe court held that the trial court case was authorized to impose such a protective order under Article 191.
Similarly, in this case, in order to enforce its determination that the child enjoy the same standard of living she would enjoy were she living with the non-custodial parent, if financially possible, the court deemed it necessary that the parents exchange financial information. We find no abuse of the trial judge’s discretion.
Furthermore, we find Walker v. Walker, 02-606, pp. 2-3 (La.App. 3 Cir. 12/4/02), 832 So.2d 1098, 1101 distinguishable. In Walker, the trial court ordered the parties to exchange income information and make child support adjustments throughout the year because of the father’s variable income. While the Third Circuit understood that the trial court ruled as it did in an effort to try to alleviate some of the parties’ burden of having to return to court when Mr. Walker’s income changed, that circuit did not find support for it in the law. In this case, unlike Walker, the parties were not ordered to make child support adjustments.

Direct Payment

Mr. Dufresne argues that after the trial judge specifically included the child’s private school tuition as part of the child support award, Ms. Dufresne withdrew the trial from private school although Ms. Dufresne continues to collect the tuition amount on a monthly basis. He asserts that the trial judge should have provided for the direct payment of the tuition only in the event that expense is actually incurred. He asks this court to reverse that portion of the judgment and credit him with reimbursement of the alleged unused tuition expense.
We find no support in the record for Mr. Dufresne’s allegation that Ms. Dufresne ever withdrew the child from private school. Ms. Dufresne testified that at one point, Mr. Dufresne promised to pay Mia’s tuition for the sixth, seventh, and |17eighth grades after Ms. Dufresne expressed concern about being able to pay the tuition and possibly having to remove Mia from the Catholic school. However, Mr. Du-fresne only paid tuition for the sixth grade. Ms. Dufresne paid the tuition thereafter. At the time of trial she testified that she *760 has been paying the tuition ever since. In addition, she has paid all of Mia’s school expenses. For example, Mia is on the dance team and she is an altar server. Students also perform charity work. At the time of trial, Mia was enrolled at St. Charles Borromeo Catholic School in the eighth grade. Ms. Dufresne paid the tuition for the eighth grade.
Furthermore, Mr. Dufresne testified at trial that his direct payment of expenses was not an issue for him as long as the expenses were paid.
Mr. Dufresne also argues that Ms. Du-fresne refused to pay tuition out of the original child support award. However, the former trial judge excluded tuition from the interim child support award. And, this issue of reimbursement was previously litigated.
In Dufresne, supra, 08-215 at 17, 992 So.2d at 590-91, this Court held:
Apparently, the trial court did not include private school tuition in the prior calculation for child support and for this reason, he did not allow a credit for the tuition. A trial court’s decision as to whether to include private school tuition in the child support obligation is a factual determination, not to be disturbed in the absence of abuse of discretion. Ro-bichaux v. Robichaux, 2004-162 (La. App. 3 Cir. 6/2/04), 879 So.2d 279. We see no abuse of discretion in the trial court’s failure to credit Mr. Dufresne for payment of private school tuition.
Finally, Ms. Dufresne testified that she is opposed to Mr. Dufresne’s paying expenses directly because of past conflicts and the fact that Mr. Dufresne resides in Houston. In addition to the tuition conflict, a conflict over the payment of orthodontic expenses occurred.
Based on the record, we find no abuse of discretion in the trial judge’s denying Mr. Dufresne’s request to pay expenses directly-
| ^Filial Spousal support
Mr. Dufresne argues that the trial judge erred in awarding $1025 per month in final spousal support for a term of 60 months. The court made the award retroactive to the date of termination of interim spousal support. Mr. Dufresne asserts that Ms. Dufresne did not provide adequate documentation of her expenses, inflated her expenses, and failed to establish necessitous circumstances. He further argues that Ms. Dufresne voluntarily increased her liabilities with regard to the purchase of a new house and a new vehicle.
At trial, Ms. Dufresne testified that she is only able to work one job because she is a single parent and she has Mia — a 13-year-old — 100% of the time. Ms. Du-fresne has a busy schedule bringing Mia to dancing as well as other school activities. She is currently a salaried employee. She is employed as an executive assistant by Randa Accessories with a net monthly income of $1832.58. She has no other resources other than current child support from Mr. Dufresne in the amount of $2240. Therefore, her total gross monthly income is $4072.58.
Her total assets, including her $240,000 home, her $24,000 vehicle, and cash total approximately $277,000.
In terms of her liabilities, she has a first mortgage on her house with a balance of $96,000. She has an automobile loan with a balance of approximately $24,000. She has a couple of credit card bills, owing amounts of $8000 and approximately $9000 on each card, respectively. She has charged on credit cards in order to pay her bills. She also owes Pat Franz, her former attorney, around $19,000 in attorney’s fees. She paid Ms. Franz around $31,000. *761 Most of those fees concerned domestic abuse issues.[4] In addition, she owes her current attorney | iaaround $17,000 in attorney’s fees. Exclusive of what she owes her current attorney, her total liabilities approximate $153,000. This leaves her net worth of $123,900.
Ms. Dufresne testified to her regular monthly expenses for herself and Mia. Those expenses totaled approximately $6846, leaving her with a deficiency of $2774.
She testified that she and Mr. Dufresne separated around January 2004. At that time, Ms. Dufresne gave her a check for $200,000. She negotiated the check and purchased a home two years later for $243,000. According to Mr. Dufresne, he testified that he did not give her the $200,000. Rather, he loaned it to because they had a prenuptial agreement. He expected her to pay back the money with interest. According to Mr. Dufresne, he testified that he wrote that check in 2004. A trial judge subsequently entered a judgment allowing Ms. Dufresne to keep the $200,000 plus $34,000 in interest. And, whenever the house sells, either Mr. Du-fresne will owe her an additional $56,000 or nothing.
Ms. Dufresne stated that she did not use the entire $200,000 for the house purchase. If she had done so, she would not have been able to pay any bills, such as attorney’s fees and expenses. Approximately $150,000 went toward the purchase of the house. The approximate $50,000 balance went into account for her living expenses. She took out a house loan for $100,000. She agreed that her monthly note would be half the amount if she had used the entire amount to put down on the house.
In 2006 and 2007 she was driving Mr. Dufresne’s Lexis 470 utility vehicle valued around $70,000. She rejected Mr. Du-fresne’s offer to give her that vehicle in lieu of spousal support. Now, she has a car note of $600 on a $30,000 car. She 12pstated that she could not afford to maintain a Lexis and in addition to that she needed the cash.
Ms. Dufresne’s financial statement introduced at trial indicated that her total monthly expenses were $6846, with $3228 attributable to her. Mr. Dufresne complains that the trial judge improperly considered Ms. Dufresne’s monthly clothing expense of $820. That amount, as explained by Ms. Dufresne, includes clothing expenses for the child, who participates in dancing activities. Also, Mr. Dufresne relies on Ms. Dufresne’s April 2007 check statement to argue that because her checking account showed debits of only $2,639.64 that month and together with her credit card bills totaled only $2,982, her financial statement introduced at trial showing expenses totaling 6,846 was inflated. In addition, Mr. Dufresne asserts that Ms. Dufresne admitted she inflated her utility costs. Ms. Dufresne’s calculated $722 per month for utilities (gas, phone, electricity, water, and television) on her financial statement for the total for herself and her daughter while at trial, she testified on cross examination the figure was $509. However, Ms. Dufresne explained that when she calculated the financial statement, she had the benefit of her check records in order to establish the amount.
Once freedom from fault is established, the basic tests for the amount of spousal support are the needs of that *762 spouse and the ability of the other spouse to pay. Dufresne, supra, 08-215 at 14, 992 So.2d at 589 citing La.C.C. arts. Ill, 112. The award for final periodic spousal support is governed by La.C.C. art. 112, which requires the court to consider all relevant factors. Id. at 4-5, 992 So.2d at 589. Final periodic support is awarded to a former spouse in need and is limited to an amount sufficient for maintenance as opposed to a continuation of an accustomed style of living. Id., citing Mizell v. Mizell, 37,004 (La.App. 2 Cir. 3/7/03), 839 So.2d 1222, writ denied, 06-2884 (La.3/9/07), 949 So.2d 440. Maintenance includes lz1food, shelter, clothing, transportation, medical and drug expenses, utilities, household necessities and income tax liability generated by alimony payments. Mizell, supra at 12, 839 So.2d at 1229 (citations omitted).
Here, Ms. Dufresne testified that she is unable to get a second job to meet her expenses because she has Mia 100% of the time, and brings Mia to dance and other activities. At the time of trial, Mia was 13. In 60 months, Mia would be 18, thereby allowing Ms. Dufresne the ability to increase her income by getting a second job. Also, since she is unable to pay her monthly expenses, she has now incurred credit card debt, owing amounts of $8000 and approximately $9000 on each card, respectively. As for as her alleged voluntary indebtedness, Ms. Dufresne explained that if she used the entire $243,000 to place on a house, she would have been unable to meet her expenses. Furthermore, she needed transportation and the Lexis would have been costly to maintain. In addition, Mr. Dufresne only offered the Lexis in lieu of spousal support.
Mr. Dufresne argues that he is not responsible for recreation, gifts, and donations. However, the amounts for Ms. Du-fresne alone total only $350 per month and would still leave a deficit of $6,496 with a deficit of $2,878 attributable to Ms. Du-fresne alone.
The trial court is vested with great discretion in making post divorce alimony determinations. Noto v. Noto, 09-1100, pp. 8-9 (La.App. 5 Cir. 5/11/10), 41 So.3d 1175,1179 (citation omitted). Because the trial court is vested with much discretion in determining awards of spousal support, these determinations will not be disturbed absent a clear abuse of discretion. Id.
In Noto, supra, the Mr. Noto alleged that the trial court erred in finding that Ms. Noto was in need of final periodic spousal support because she earned $47,786.76. He also argued that the trial court erroneously included luxury items. | aaThis Court, however, affirmed the $1500 award, concluding that the trial court’s reasons for judgment, which do not form part of the official judgment, would not be reviewed by this Court for correctness. The Court concluded that despite the fact that “maintenance” allows for the basic necessities of life and does not include luxury items, the evidence submitted supported a $1,500.00 award without including the luxury items. Id. at 10, 41 So.3d at 1181.
Similarly, the trial judge credited Ms, Dufresne’s testimony and concluded that her needs exceeded her income. The acceptance of such expenses is an issue of credibility. Vorisek v. Vorisek, 423 So.2d 758, 764 (La.App. 4 Cir.1982). The trial judge is in the best position to evaluate the witnesses and their testimony. Id. In this case we find no abuse of that discretion.

Conclusion

For the foregoing reasons, the judgment is affirmed in its result, although this Court does not subscribe to the trial *763 court’s written reasons to consider evidence that was not introduced at trial.

AFFIRMED.

. The current trial judge, Hon. Judge M. Lauren Lemmon succeeded the Hon. Judge Kirk Granier after being elected to the seat.

. Mr. Dufresne also complains of various alleged inconsistencies in the reasons. Again, reasons for judgment are not binding.

. We note that Mr. Dufresne also complains of other reasons given by the trial judge. In this regard, he complains of the trial judge’s reasoning that he was voluntarily underemployed. But having found ample support for the trial judge’s deviation, we pretermit a discussion regarding the alleged underemployment.

. Pursuant to the domestic abuse statutes, the trial court awarded of $7190.60 in attorney's fees plus legal interest thereon from June 18, 2007 through July 31, 2007, the date the amount awarded was deposited in the registry of the court by the court's judgment dated July 3, 2007. Mr. Dufresne does specify error as to the award.