# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 04-162

**MARION ELIZABETH BERRY ROBICHAUX**

**VERSUS**

**FLOYD JOHN ROBICHAUX**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20014272
HONORABLE DAVID BLANCHET, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**MARC T. AMY
JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Billie Colombaro Woodard, and Marc T. Amy, Judges.

**AFFIRMED AS AMENDED.**

**Edward J. Milligan  Jr.**
**Post Office Box 90282**
**Lafayette,  LA 70509**
**(337) 237-6491**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Floyd John Robichaux**

**Vincent Joseph Saitta**
**Colomb & Saitta**
**428 Jefferson Street**
**Lafayette,  LA 70501**
**(337) 231-5250**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Marion Elizabeth Berry Robichaux**

AMY, Judge.

The defendant appeals the trial court's determination that he was voluntarily underemployed in calculating his child support obligation. He further contests the elements considered in calculating his income, the inclusion of private school tuition in the support obligation, and the judgment's inclusion of extraordinary medical expenses. Finally, both parties agree that the judgment included an error in the calculation of their adjusted gross income. For the following reasons, we affirm as amended.

**Factual and Procedural Background**

The parties, Floyd and Beth Robichaux, were divorced in April 2002. The present case involves the child support obligation calculated following the divorce. In January 2002, prior to the confirmation of their divorce, the parties stipulated that Mr. Robichaux's child support obligation for the two minor children[1] was as follows:

> Appearers agree that FLOYD JOHN ROBICHAUX will pay to MARION ELIZABETH BERRY ROBICHAUX the sum of FIVE HUNDRED FIFTY AND NO/100 ($550.00) DOLLARS for support of the minor children, which payment will be made on or before the 17th day of each month and which payment is retroactive to the date of filing, specifically August 20, 2001, and the parties further agree that in six (6) months after the date of appearance before this Court, they will appear in Court for purposes of having a full hearing on the issue of child support.

This stipulation was included in a Judgment to Rules executed on January 10, 2002.

The present matter came before the court after Ms. Robichaux filed a "Rule for Past Due Child Support, Rule for Contempt and Attorney's Fees, and Rule to Modify Child Support and Establish Payment of Health Care Costs of the Minor Children" in March 2003. At the time the trial court considered the above rule, it observed that, due to a variation between the stipulation and the Judgment on Rules, it "must decide

---

[1] The record indicates that the couple's daughter reached the age of eighteen during these proceedings, the judgment's eventual decrease in the support obligation is reflective of this change.

the amount of child support due by FLOYD to BETH from August 20, 2001 through the date of hearing, May 22, 2003."

The trial court issued reasons for ruling, noting the parties' educational and work histories. The trial court observed that the couple operated Ms. Robichaux's parents' business, Racoon Records, and that Ms. Robichaux eventually purchased the business from her parents. During this period, Mr. Robichaux earned as much as $75,000 to $80,000 per year. The record reveals, and the trial court observed, that Mr. Robichaux left the business in 1999 due to unhappiness with Ms. Robichaux's father's continued participation in the operation of the business. During the subsequent years, Mr. Robichaux became a real estate agent earning $3,000 during the 1999-2000 year and a mortgage banker earning $3,000 to $4,000 during the year 2000. At the time of the hearing, Mr. Robichaux was employed as a staff person for State Farm Insurance, earning approximately $18,000 per year. He earned an additional $900.00 in commissions. Mr. Robichaux explained that he has been relying on various investments obtained in the community property partition to meet his living expenses.

Due to the closure of Raccoon Records, Ms. Robichaux's income decreased as well. At the time of the hearing on the matter, she was collecting unemployment benefits in the amount of $236.00 per week. Ms. Robichaux was seeking employment as a secretary or accounting clerk.

Considering Mr. Robichaux's educational and employment background, the trial court found Mr. Robichaux to be voluntarily underemployed, ordering that his child support obligation be set at the following amounts for the various time periods: 1) $666.00 per month - August 30, 2001 to December 31, 2001; 2) $865.07 per month - January 1, 2002 to December 31, 2002; 3) $885.57 per month - January 1, 2003 to March 31, 2003; 4) $1,198.40 per month - April 1, 2003 to June 10, 2003; 5)

2

$1,113.93 per month - June 11, 2003 to July 5, 2003; 6) $803.09 per month - July 6, 2003 to August 31, 2003; 7) $663.25 per month - September 1, 2003 forward.

Mr. Robichaux appeals, assigning the following as error:

1. The Trial Court's findings that Appellant was voluntarily underemployed is manifestly erroneous.

2. The Trial Court committed manifest error in allocating the entire amount derived by Appellant from Capital Gain and his IRA Distribution for the year 2001 as income.

3. The Trial Court committed manifest error in allocating the entire amount of his Pension for the year 2002 as income.

4. The Trial Court committed manifest error and abused its discretion in ordering that the remaining child continue to attend private school as opposed to public school.

5. The Trial Court's calculation as to the gross income of both parties for April 1, 2003 through June 10, 2003 of $6,816.67 is manifestly erroneous.

6. The Judgment is manifestly erroneous as to apportioning uncovered medical expenses since the Trial Court did not decide this issue nor address it in his reasons for Judgment.

**Discussion**

*Voluntary Underemployment*

In his first assignment of error, Mr. Robichaux questions the trial court's determination that he is voluntarily underemployed. He notes that, after obtaining his undergraduate degree in Marketing, he worked for Stuller Settings, earning approximately $40,000. He left that position to work at Raccoon Records, earning $75,000 to $80,000 per year. He testified that he felt this salary was high, but that was the figure paid to him by the family for his work. Mr. Robichaux explained that his subsequent positions did not result in the type of earnings he had anticipated. He testified that, at the time of the hearing, he earned $1,800 per month and, while eligible for commissions, business was slow. He contends the position with State

3

Farm presents "a potential for growth and advancement for him." Furthermore, he contends, Ms. Robichaux produced no evidence of bad faith on his part in seeking a lower paying position in order to lower his child support obligation. He notes that his decision to leave employment with Raccoon Records was not due to fault or neglect in protecting his employment, but stemmed from difficulties with his father-in-law. He points to cases denying a finding of voluntary underemployment which he contends are factually analogous.

Louisiana Revised Statutes 9:315.11 provides:

> If a party is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of his or her income earning potential, unless the party is physically or mentally incapacitated, or is caring for a child of the parties under the age of five years.

In ruling on the issue of Ms. Robichaux's claim of involuntary underemployment, the trial court explained, in part:

> Since leaving Raccoon Records, Floyd has earned a real estate license, a mortgage originator's license, a property and casualty insurance license, a life and health insurance license and a notary public commission. Also, Floyd testified that he did not want to return as an employee of Stuller Settings because he did not like working for the company. Apparently, FLOYD has never even checked to see if Stuller Settings would be interested in rehiring him.
>
> FLOYD testified that the Chris Kidder State Farm Insurance Agency had potential and that he thought things would get better. FLOYD also believed that he would get better at selling insurance, which would raise his commissions though he could not say to what degree. Remarkably, FLOYD testified that he has never had a meeting with his employer, Chris Kidder, to discuss his future with the business. In addition, though his starting pay with State Farm Insurance is approximately what a secretary earns, FLOYD has not looked for any other employment over the past fifteen (15) months.
>
> The Court finds that FLOYD is voluntarily underemployed considering his work history and educational background. The Court notes that FLOYD has used personal funds acquired through the community property partition to maintain a much higher lifestyle than his current salary would warrant. If FLOYD can supplement his own

4

living expenses in hopes that his income will increase at Chris Kidder State Farm Insurance Agency, then there is no reason why he should not be supporting his children at that level. The Court believes that FLOYD's lack of motivation in seeking employment equal to his abilities is directly related to his anger over leaving Raccoon Records and his belief that he and BETH were co-owners of the store. FLOYD testified that he regularly works out at Red Lereille's Health Club, which he stated was cheaper than therapy. Though the Court does not order that FLOYD attend counseling, it may indeed help him to deal with his anger and depression over these matters and the resulting lack of motivation on his part to pursue a better paying position.

As of the date of the hearing on May 22, 2003, FLOYD was earning $1,989.47, which includes $900.00 in commissions for the year 2003. However, the Court believes that FLOYD should be earning at least $35,000.00 per year at present and the Court finds that $2,916.66 should be imputed to him as his monthly adjusted gross income for 2003 and thereafter.

The record supports the trial court's finding. As stated above, Mr. Robichaux holds a college degree and a work history of substantially higher earnings than he was earning at the time of the hearing. Significantly, the trial court did not find Mr. Robichaux's earning potential to be $75,000 - $80,000, the highest earnings in his work history. Rather, the trial court set the earning potential at a more modest level, that of $35,000. We note that this figure is generally reflective of what the trial court determined Mr. Robichaux to be using to maintain his standard of living in 2002, *i.e.*, both his salary and his investment income. Having reviewed the record, we find no manifest error in the trial court's determination that Mr. Robichaux was voluntarily underemployed, with an earning potential of $35,000.

This assignment lacks merit.

*Calculation of Gross Income*

In his next two assignments of error, Mr. Robichaux contends that the trial court erred in the calculation of his monthly gross income for 2001 and 2002. In particular, Mr. Robichaux questions the inclusion of capital gains, an IRA distribution, and his

5

pension. He admits that these resources were used "from their withdrawal to the present to subsidize his living expenses and obligations through the date of the hearing in 2003." He further states that after "these funds are depleted, he will be relegated to a monthly income with Chris Kidder Insurance Agency consisting of a salary and any bonuses or commissions that he may earn through his efforts. The income derived by Appellant from these items should have been prorated over a period of time and utilizing the amounts in each year gives a false impression as to Appellant's actual gross earnings."

Louisiana Revised Statutes 9:315(C)(4)(a) indicates that a "gross income" calculation is to include:

> The income from any source, including but not limited to salaries, wages, commissions, bonuses, dividends, severance pay, *pensions*, interest, trust income, recurring monetary gifts, annuities, *capital gains*, social security benefits, workers' compensation benefits, unemployment insurance benefits, disability insurance benefits, and spousal support received from a preexisting spousal support obligation[.]

(Emphasis added.)

In discussing the calculation of gross annual wages, the trial court explained:

> FLOYD's 2001 Income Tax Return indicates that he earned $17,097.00 in wages; however, this was the portion of BETH's wages attributed to him during the marriage. Therefore, this figure will not be considered by the Court to determine FLOYD's 2001 income. Though the Schedule C indicates FLOYD had a business loss of $1,776.00, the Court has added back in $2,655.00 for depreciation and $906.00 in truck expenses. FLOYD presented no evidence or testimony to indicate that he needed the use of a vehicle in the mortgage business, and since he did not introduce the depreciation schedules into evidence, the Court finds that he earned a total of $1,785.00 in income from his business. The Court also notes that during 2001, FLOYD had a capital gain of $14,750.00, received an IRA distribution of $11,000.00, together with $1,699.00 in real estate income and $20.00 in taxable interest. Accordingly, the Court finds that FLOYD's adjusted gross income for 2001 was $29,254.00, or $2,437.83 per month.
>
> FLOYD's 2002 tax returns indicate that he earned $19,648.00 working for State Farm Insurance Company. Also, FLOYD cashed in

6

approximately $29,082.00 worth of pension and annuities, $11,158.00 of which was taxable. Of the $29,082.00 he testified that he had approximately $8,000 left as of the date of trial. FLOYD testified that he used his money to subsidize his living expenses. Therefore, the Court calculates that FLOYD spent approximately $14,055.00 of the pension during 2002, which when added to his salary of $19,648.00 and $417.00 in rental income the Court finds that he lived on $34,120.00 or $2,843.33 per month.

Given the definition of "gross income" contained in La.R.S. 9:315(C)(4)(a), we find no error in the trial court's determination to include those figures in the calculation of Mr. Robichaux's gross income. Furthermore, given the ready access to these sums, whether spent in a single year or not, we find no abuse of discretion in the trial court's decision to include the figures in the years in which they were considered rather than incorporate them in a *pro rata* fashion as urged by Mr. Robichaux.

This assignment lacks merit.

*Private School Tuition*

In his next assignment of error, Mr. Robichaux questions the trial court's inclusion of private school tuition for the minor child in the child support obligation. He points out that, during the marriage, he and Ms. Robichaux enjoyed a comfortable lifestyle and chose for their children to attend private school. Mr. Robichaux notes that his salaries while employed at Stuller Settings and Raccoon Records permitted this expense. However, as discussed above, his subsequent positions did not produce equivalent income. Similarly, Ms. Robichaux's income had decreased as well. Pointing to *Piccione v. Piccione*, 01-1086 (La.App. 3 Cir. 5/22/02), 824 So.2d 427, Mr. Robichaux contends that the trial court is required to consider both the needs of the child and the parents' ability to pay in calculating the support obligation. Due to

7

the couple's reduced salaries, Mr. Robichaux argues, the private school tuition was incorrectly included in the support figure.

Louisiana Revised Statutes 9:315.6, entitled "Other extraordinary expenses; addition to basic obligation" provides, in part:

> By agreement of the parties or order of the court, the following expenses incurred on behalf of the child may be added to the basic child support obligation:
>
> (1) Expenses of tuition, registration, books, and supply fees required for attending a special or private elementary or secondary school to meet the needs of the child.

In ruling on this issue, the trial court found:

> As of August 20, 2001, when the Petition for Divorce, Custody and Child Support was filed, the two (2) minor children were both attending private schools. When Michelle was younger, she attended Our Lady of Fatima School and at the time the divorce proceedings were instituted she was attending St. Thomas More Catholic High School. The only school ever attended by Ross was Our Lady of Fatima School which he was still attending at the time of the hearing in this matter. The testimony at trial indicated that both parties agreed that a Catholic school education would be a good education for their children. In 2001, the cost of St. Thomas More was $399.17 per month. For the 2003-2004 school year, the cost of tuition at Fatima is $3,985.00 subject to an annual grant in the amount of $1,500.00, for a total of $207.08 per month.
>
> FLOYD argues that BETH lives in a good school district, and there is no reason why Ross cannot attend public school in the fall. . . .
>
> The official comments to La.R.S. 9:315.6 state that it is no longer [] necessary to show that attendance at a special or private school is required to meet the "particular educational" needs of a child. Instead, the needs of a child to be met by the special or private school may include the need for stability or continuity in the child's educational programs. The Court finds that it is in the best interest of Ross that he continues at Our Lady of Fatima School for his stability and continuity, especially in light of the facts in this case. His parents have now divorced, his sister has graduated from high school and will be moving on to college, and his mother has lost her business and they have had to move to a smaller residence. All of these changes in Ross's life are a lot for a nine (9) year old child to handle. The Court feels that Ross should not have to undergo the traumatic experience of changing schools. ROSS should not be made to suffer because his parents' marriage broke up.

8

The subsequent child support calculations reflect inclusion of private school tuition, both for the couple's daughter until her graduation and their son's continuing tuition. A trial court's decision as to whether to include private school tuition in the child support obligation is a factual determination, not to be disturbed in the absence of abuse of discretion. *Preslar v. Preslar*, 35,862 (La.App. 2 Cir. 6/12/02), 821 So.2d 577.

Having reviewed the trial court's reasons in light of the record, we find no such abuse of discretion. In addition to the trial court's finding that continuation of the minor child's private school education could offer stability in a time of significant change, the trial court found that Mr. Robichaux's standard of living was supplemented by the use of investment funds. We find no abuse of discretion in the determination that, whether Mr. Robichaux meets his earning potential through a salary or through a supplemental source such as investment income, he is financially able to assist with private school tuition.

This assignment lacks merit.

*Calculation of the Parties' Gross Income*

In his next assignment of error, Mr. Robichaux points to an error in the trial court's calculation of the gross income of both parties for the period of April 1, 2003 through June 10, 2003. Ms. Robichaux agrees in her brief that the trial court's calculation of $6,816.67 for the couple's gross income for that period is in error. Reference to the trial court's reasons for ruling reflect the error. Ms. Robichaux's adjusted gross income for that period was found to be $1,022.67 per month while Mr. Robichaux's adjusted gross income was found to be $2,916.67. These figures total $3,939.34. As the trial court's calculation contained in the judgment is incorrect, we

amend the judgment to reflect that the couple's adjusted gross income for the period of April 1, 2003 through June 20, 2003 is $3,939.34.

*Apportionment of Uncovered Medical Expenses*

Finally, Mr. Robichaux questions the judgment's provision for apportionment of uncovered medical expenses. Mr. Robichaux does not question the fact that he was assigned a percentage of the uncovered medical expenses. Rather, he appears to contend only that the inclusion of the expenses is in error as there was no discussion of the uncovered medical expenses in the trial court's reasons for ruling.

In the event that a trial court's reasons for ruling and judgment conflict, the judgment controls. *Moss v. Coury*, 97-640 (La.App. 3 Cir. 12/10/97), 704 So.2d 1248, *writ denied*, 98-783 (La. 5/29/98), 720 So.2d 340. Accordingly, we find no error in the judgment's provision for the uncovered medical expenses of the minor child.

This assignment lacks merit.

### DECREE

For the foregoing reasons, the judgment of the trial court is amended to indicate that the parties' adjusted gross income for the period of April 1, 2003 through June 20, 2003 is $3,939.34. In all other respects, the judgment is affirmed. All costs of this proceeding are assigned to the appellant, Floyd John Robichaux.

**AFFIRMED AS AMENDED.**