STEPHEN J. WINDHORST, Judge.
| ¡Appellant, Heidi Rutland, seeks review of the trial court’s judgment establishing a final child support award. For the following reasons, we affirm.
PROCEDURAL HISTORY AND EVIDENCE
Ms. Rutland and Mr. Rutland were married on June 1, 2002. One child was born of their marriage on August 12, 2003. The parties separated on March 10, 2010. Ms. Rutland filed a petition for divorce on February 7, 2011, and requested custody of her minor son, subject to supervised visitation and child support. A hearing on the ancillary matters was initially scheduled for March 14, 2011, but was continued to April 11, 2011, at the request of Mr. Rut-land’s counsel.
At the April 11, 2011 hearing, Mr. Rut-land testified that he was previously employed with the St. James Parish Sheriffs Office (“Sheriffs Office”) for eight years. He further testified that he was fired from the Sheriffs Office for sleeping on the job and he was denied unemployment as a result. Mr. Rutland testified that he was currently unemployed although he had applied for several jobs. He also testified that he had to sell his house and he moved to Mississippi where he currently resides with his parents, rent free. He explained that his parents helped him out by giving him money when he needed it, the largest amount being sixty dollars at a given time. He testified that the money was a gift and not a loan from his parents.
|sOn April 11, 2011, the trial court rendered judgment granting Ms. Rutland interim child support in the amount of $200 per month based on Mr. Rutland’s unemployed status and the child support guidelines.[1] The judgment further ordered a review to be set within 90 days to determine Mr. Rutland’s employment status and to re-evaluate child support after the parties completed a custody evaluation.
On November 11, 2011, Mr. Rutland filed a rule to show cause why a divorce should not be granted. The rule was set for December 12, 2011, but was continued to February 13, 2012, by Ms. Rutland’s counsel. The rule was again continued to June 11, 2012, by counsel for Mr. Rutland. On March 30, 2012, Ms. Rutland filed a rule to show cause why divorce should not be granted and requested a hearing to increase interim child support with a retroactive date to the date of judicial demand. The rule was scheduled for May 14, 2012, but was continued to June 11, 2012, by Mr. Rutland’s counsel.
A judgment of divorce was rendered on June 11, 2012, with the trial court deferring all other ancillary matters to be heard on August 13, 2012. The judgment addi *778 tionally ordered Ms. Rutland to comply and complete the custody evaluation and to produce her income earning documents for the last two years by August 1, 2012. On August 1, 2012, the trial court continued the ancillary matters to September 10, 2012. After a joint request of counsel, the matter was again continued and reset for September 12, 2012.
On September 12, 2012, the parties appeared before the trial court to determine custody and child support. Mr. Rutland testified that he was fired from the Sheriffs Office for sleeping on the job. He further testified that he applied for jobs at Shell Geismer and at all the plants, but was not offered a job. He also | ¿testified that in March 2011, he sold his house and moved to Mississippi to live with his parents. He testified that he primarily moved in with his parents to help his mom take care of his dad who has a medical condition. He further testified that he does not pay rent to his parents; however, he pays for his own food, gas, and all other necessary needs. Mr. Rutland testified that he occasionally received funds from his parents as a gift when he needed help, but does not currently receive any funds from them.
Mr. Rutland further testified that he started working at Consolidated Container Company in May 2011. He worked as an operator making plastic bottles until December 16, 2011, when he was fired for missing a “dye line” on the bottles. He also admitted that he signed a daily check report which contained false information. He testified that he made $15.00 an hour as an operator.
Mr. Rutland also testified that he started working at Dixie Packaging Incorporated in January 2012. He started out at $9.00 an hour, but he currently makes $9.50 an hour, plus 16 hours overtime at a rate of $14.25 an hour each paycheck. Mr. Rutland testified that even though he is currently employed with Dixie Packaging, he is still looking for employment with a higher rate of pay. He has applied for employment at several places, including Georgia Pacific where the starting income is $18.00 an hour. However, he testified that he has not received any job offers that have a higher pay rate than his present employment with Dixie Packaging.
Additionally, Mr. Rutland admitted that he cleared over $9,000.00 from the sale of his house in 2011. He testified that he was not aware that Ms. Rutland’s counsel had requested that he hold off on the sale or escrow the funds.. He conceded that he did not give Ms. Rutland any funds from the sale of the house. Mr. Rutland further admitted that he withdrew his pension in the amount of|r,$19,051.00 sometime around October 2011 through the end of the year. He testified that he received around $15,000.00 after 20% was taken out for taxes. He conceded that he did not give any funds to Ms. Rutland even though the majority of his pension was earned during his marriage. He further testified that he used the funds received from his pension and the sale of his house to pay off prior judgments, mortgages and other bills and that he used the rest of the money for his personal expenses since he was unemployed at that time.
The trial court found that Mr. Rutland was underemployed due to being terminated from two jobs, the Sheriffs Office and Consolidated Containers. The trial court found that Mr. Rutland currently makes $9.50 an hour, plus 16 hours overtime at a rate of $14.25 an hour each paycheck for an average monthly income of $2,141.00.[2] *779 The trial court further found that Mr. Rutland averaged $4,446.00 per month at the time of his termination with the Sheriff’s Office, based on a W-2 form showing earnings of $43,013.00 for an approximately nine-month period of time.[3] Additionally, the trial court noted that it may be difficult for Mr. Rutland to find a job earning the same rate of pay as he earned with the Sheriffs Office. As a result, the trial court attributed an additional $859.00[4] per month to Mr. Rutland for a monthly income earning potential in the amount of $3,000.00.
The trial court further acknowledged that Mr. Rutland withdrew funds from his pension and netted $15,000.00, as well as netting $9,419.38 from the sale of his separate home in March 2011. However, the trial court found that these amounts | ¿were not ongoing sources of income since the court was setting child support as of September 12, 2012. The trial court noted that Ms. Rutland retains her right to assert her community interest in Mr. Rut-land’s pension and possible reimbursement for the sale of the house.
Based on Ms. Rutland’s stipulated income of $5,535.00 per month[5] and Mr. Rutland’s income earning potential of $3,000, plus amounts owed for insurance, the trial court calculated and awarded Ms. Rutland child support in the amount of $474.90 per month, effective September 12, 2012.[6] The court also found that good cause did not exist to make the award retroactive to the date of judicial demand. In discussing good cause, the trial court found that Mr. Rutland consistently paid the interim child support of $200.00 timely and was never in arrears. The court further found that the 90 day review of the child support did not take place because Ms. Rutland failed to comply with the interim order by failing to complete her custody evaluation timely and the matter was not set within 90 days. The trial court noted that if Ms. Rutland had complied, a final child support award could have been set sooner. It is from this judgment that Ms. Rutland appeals.
RETROACTIVITY OF CHILD SUPPORT AWARD
In her first assignment of error, Ms. Rutland contends that the trial court erred in refusing to make the child support award retroactive to the date of judicial demand. Ms. Rutland contends that Mr. Rutland misled the trial court to believe that from the date of his termination with the Sheriffs Office until the April 11, 2011 hearing, he was unemployed, he had no income, and was supported by gifts of money from his parents. Ms. Rutland ar *780 gues that Mr. Rutland testified |7untruthfully and did not inform the court of his net gain from the sale of his house and from the withdrawal of his pension. Ms. Rutland further contends that since Mr. Rutland misled the court to believe his income was substantially lower than it was, she is entitled to have the child support award made retroactive to the date of judicial demand.
La. R.S. 9:315.21 sets forth the circumstances when a court may make a child support award retroactive. La. R.S. 9:315.21 provides in pertinent part:
A. Except for good cause shown, a judgment awarding, modifying, or revoking an interim child support allowance shall be retroactive to the date of judicial demand, but in no case prior to the date of judicial demand.
B. (1) A judgment that initially awards or denies final child support is effective as of the date the judgment is signed and terminates an interim child support allowance as of that date.
(2) If an interim child support allowance award is not in effect on the date of the judgment awarding final child support, the judgment shall be retroactive to the date of judicial demand, except for good cause shown, but in no case prior to the date of judicial demand.
Prior to Vaccari v. Vaccari, 10-2016 (La.12/10/10), 50 So.3d 139, appellate courts consistently held that a final award of child support was not retroactive to the date of judicial demand when an interim award of child support had been in effect. The Supreme Court in Vaccari held' that “upon a showing of good cause, a trial court may order a final child support award retroactive to the date of judicial demand even though there has been an interim award in effect.” Vaccari, 50 So.3d at 143.
In Vaccari, Mr. Vaccari represented to the court, through an affidavit, that his net income for the year was $262,273.00 and the trial court awarded Ms. Vaccari interim child support based on this figure. Id. at 141. After an antagonistic discovery process wherein both parties accused the other of withholding relevant financial information, including tax returns and corporate | ¿records, the trial court appointed an expert to determine each party’s net income. Id. The court’s expert found that Mr. Vaccari’s net income was significantly higher than represented to the court. Id. at 141-142. The court’s expert further recommended that the monthly child support award be $16,546.00, retroactive to the date of filing. Id. at 142. The trial court adopted the expert’s recommendation. Id. at 141-142. Mr. Vaccari appealed the judgment which was affirmed in part and amended in part. Id. The court of appeal held that La. R.S. 9:315.21 did not allow a trial court to render a final child support award retroactive to the date of judicial demand when there is an interim child support award in effect. Id.
The Supreme Court found that Mr. Vac-cari made several attempts to hide the significant wealth he controlled in the companies he owned. Id. at 144. The Supreme Court further noted that “through his own obfuscatory tactics, Mr. Vaccari was able to temporarily mislead the trial court into believing his means were far lower than they actually were. As a result he avoided paying over $500,000 in rightly owed child support.” Id. at 144. The Supreme Court reversed and reinstated the trial court judgment finding that
... the relevant statute does not forbid a court from rendering a final child support award retroactive, and good cause exists for the trial court to do so here. This is not to say a final child support award must be retroactive, or even that it should be made retroactive in every *781 proceeding. But in cases such as this one, where a party files a false affidavit in an effort to avoid the full extent of his child support obligation, it is only proper to make the award retroactive so he will not benefit from his own misdeeds. Id. at 140.
In the case now before us, however, the record does not support a finding of misrepresentation of material facts or other misdeeds by Mr. Rutland to such an extent as to justify a conclusion that the trial court abused its discretion in applying the Vaccari standard. We conclude that the trial court did not err in finding that good cause did not exist to make the child support award retroactive to the date of 1 ¡judicial demand. Clearly the facts of this case do not rise to the level of atrocious misrepresentations that led to the holding in Vaccari. Accordingly, this assignment of error is without merit.
CALCULATION OF CHILD SUPPORT
In her second assignment of error, Ms. Rutland contends that the trial court erred in calculating Mr. Rutland’s child support obligation based on a gross income of $3,000.00 per month, considering the fact that the court found him voluntarily underemployed. Specifically, Ms. Rutland argues that the trial court erred in refusing to use Mr. Rutland’s income with the Sheriffs Office as his income earning potential for the purpose of calculating child support, and his income earning potential should have included funds received from Mr. Rutland’s withdrawal of his pension and capital gains received from the sale of the house, retroactive to the date of judicial demand.
A child support award is entitled to great weight and will not be disturbed on appeal absent an abuse of discretion. Dufresne v. Dufresne, 10-963 (La.App. 5 Cir. 5/10/11), 65 So.3d 749, 754. La. R.S. 9:315C(3) sets forth the definition of “gross income,” as follows:
(a) The income from any source, including but not limited to salaries, wages, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, recurring monetary gifts, annuities, capital gains, social security benefits, workers’ compensation benefits, unemployment insurance benefits, disaster unemployment assistance received from the United States Department of Labor, disability insurance benefits, and spousal support received from a preexisting spousal support obligation.
La. R.S. 9:315C(5)(b) provides that for the purpose of child support calculations, “income” includes:
(b) Potential income of a party, if the party is voluntarily unemployed or underemployed. A party shall not be deemed voluntarily unemployed or underemployed if he or she is absolutely unemployable or incapable of being employed, or if the | ¡¡¡unemployment or underemployment results through no fault or neglect of the party.
La. R.S. 9:315.11A provides that if a party is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of income earning potential, unless the party is physically or mentally incapacitated, or is caring for a child of the parties under the age of five years. The wage earned prior to voluntary underemployment is the best estimate of earning potential. Saacks v. Saacks, 05-365 (La.App. 5 Cir. 9/26/06), 942 So.2d 1130, 1138. Whether a party is voluntarily unemployed or underemployed is a question of good faith of the party to be cast with paying the child support award. Anderson v. Anderson, 11-864 (La.App. 5 Cir. 5/31/12), 96 So.3d 1278, 1281. Voluntary underemployment is a fact-driven *782 consideration. Id. The trial court is given wide discretion in determining the credibility of witnesses and its factual determination will not be disturbed on appeal absent a showing of manifest error. Id.
It is undisputed that Mr. Rutland was fired from his employment with the Sheriffs Office and Consolidated Containers due to his own fault. It is also undisputed that Mr. Rutland’s average monthly income with Dixie Packaging is considerably less than his average monthly income was with the Sheriffs Office. Considering the facts adduced, we do not find that the trial court was manifestly erroneous in determining Mr. Rutland was voluntarily underemployed.
Based on a review of the record, we further find that the trial court did not err in declining to use Mr. Rutland’s income from his prior employment with the Sheriffs Office to determine his income earning potential. Mr. Rutland was employed with Consolidated Containers after his termination with the Sheriffs Office, but prior to his current employment with Dixie Packaging. Mr. Rutland testified that he applied for numerous jobs, including the East Baton Rouge |, Sheriffs Office, Geis-mer Shell, and other plants, but he was not offered employment. He further testified that even though he was employed with Dixie Packaging, he was still looking for employment at jobs with a higher pay rate, including Georgia Pacific which has a starting pay of $18.00 an hour. The trial court noted that it did not believe that Mr. Rutland would be able to obtain employment at the same rate that he received with the Sheriffs Office. Considering the facts of this case, we find that the trial court did not err in determining that a reasonable income earning potential for Mr. Rutland would be $3,000.00 a month.[7] Accordingly, the trial court did not err in awarding Ms. Rutland child support in the amount of $474.90 per month.
Additionally, the funds Mr. Rut-land received from the withdrawal of his pension and capital gains received from the sale of his house were not ongoing sources of income on the date child support was established on September 12, 2012. Ms. Rutland retains her right to assert any community interest in Mr. Rut-land’s withdrawal of his pension and possible reimbursement for the sale of the house. Accordingly, this assignment of error is without merit.
CONCLUSION
For the above stated reasons, we affirm the trial court’s judgment awarding child support to Ms. Rutland in the amount of $474.90 per month, effective September 12, 2012.
AFFIRMED

. The interim judgment was signed on May 21, 2011. The interim judgment additionally addressed custody which is not appealed.

. This is a mathematical miscalculation by the trial court of Mr. Rutland’s average monthly income. The proper calculation should have been $1,976.00 based on Mr. *779 Rutland's income from his paycheck stub from Dixie Packaging Incorporated.

.The transcript reveals that the trial court erroneously stated that Mr. Rutland’s gross income in 2010 was $43,013.00. Mr. Rut-land’s W-2 reveals that his gross income was $40,013.64, which is the amount the trial court used to calculate Mr. Rutland’s average monthly income of $4,446.00 for an approximately nine month period of time. Mr. Rut-land was terminated from the Sheriff’s Office on October 21, 2010. Based on 9.659 months (294 days), Mr. Rutland’s average monthly income at the Sheriff's Office in 2010 would be $4,142.63.

. Based on Mr. Rutland’s correct average monthly income of $1,976.00, $1,024.00 a month would be the correct amount attributable to Mr. Rutland for a monthly income earning potential in the amount of $3,000.00.

. It was stipulated that Ms. Rutland receives VA disability in the amount of $1,397.00 per month and $4,138.00 per month from the St. James School Board.

. The judgment also terminated interim child support, and ruled on custody and extraordinary medical and dental bills, which are not appealed.

. We note that if Mr. Rutland obtains a job working for $18.75 an hour, his average monthly income would be $3,000.00.