PHILIP JOSEPH TRICHE, JR.

VERSUS

DANIELLE DEMARCO TRICHE

NO. 24-CA-370

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-NINTH JUDICIAL DISTRICT COURT
PARISH OF ST. CHARLES, STATE OF LOUISIANA
NO. 91,947, DIVISION "E"
HONORABLE LAUREN D. ROGERS, JUDGE PRESIDING

February 26, 2025

**MARC E. JOHNSON**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Fredericka Homberg Wicker, and Marc E. Johnson

**AFFIRMED**
 **MEJ**
 **SMC**
 **FHW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
PHILIP JOSEPH TRICHE, JR.
    Mark A. Marino

COUNSEL FOR DEFENDANT/APPELLEE,
DANIELLE TRICHE
    Renee L. Swanson

**JOHNSON, J.**

Appellant, Philip Joseph Triche, seeks review of the 29th Judicial District Court's December 1, 2023 judgment ordering him to pay child and interim spousal support monthly directly to Appellee, Danielle DeMarco Triche. For the following reasons, we affirm the judgment of the district court.

### FACTS AND PROCEDURAL HISTORY

The parties married in 2005. Two children were born of the marriage in 2006 and 2010. Philip and Danielle separated in March 2023. Philip filed for divorce under La. C.C. art. 102. Danielle answered the petition and filed a reconventional demand requesting a divorce be granted under La. C.C. art. 103(4) and (5), or article 102 in the alternative. Danielle also demanded child support and interim and final spousal support.

In November 2023, the district court tried the issues of child and spousal support. The court heard testimony from Philip and Danielle regarding their income and expenses before and after Philip lost his job as a process operator at W.R. Grace, and before and after their separation. At the end of the hearing, the court took judicial notice of its previous finding of physical abuse, granted Danielle's prayer for divorce pursuant to La. C.C. art. 103(4), and awarded her attorney's fees and court costs[1]. The court took the support matters under advisement.

On December 1, 2023, the district court issued its judgment that ordered Philip to pay child support in the amount of $1,806.93 per month, retroactive to the date of judicial demand. In calculating the child support payment, the court found that Philip was voluntarily underemployed and imputed a monthly income of $11,900 to him. The court also ordered that he pay the monthly mortgage of the matrimonial domicile as interim spousal support in the amount of $1,875.00 per

---

[1] At trial, Philip objected to the court's ruling, which is the subject of another appeal, 24-CA-369.

month. The parties were also ordered to pay their *pro rata* share, 66.48% for Philip and 33.52% for Mrs. Triche, of their minor children's tuition; health, dental, and vision insurance premiums and medical bills; and extracurricular activity costs. Philip timely appealed the district court's judgment.

## ASSIGNMENTS OF ERROR

Philip contends that the district court abused its discretion in finding that he is voluntarily underemployed. He also argues that the trial court abused its discretion in its failure to accurately determine his income in its calculation of the interim spousal support obligation and award.

## LAW AND DISCUSSION

### Child Support Determination Based on Finding Philip Was Voluntarily Underemployed

The duty of child support is a joint duty shared by both parents, in accordance with their resources. La. R.S. 9:315(A). The mutual financial responsibility for their children gives rise to an obligation that must be administered and fairly apportioned between parents. *Dugué v. Dugué*, 20-292 (La. App. 5 Cir. 3/24/21), 316 So.3d 170, 173.

A child support award is entitled to great weight and will not be disturbed on appeal absent an abuse of discretion. *McClanahan v. McClanahan*, 14-670 (La. App. 5 Cir. 3/25/15), 169 So.3d 587, 591. It is well-settled that the district court's conclusions of fact regarding financial matters underlying an award of child support will not be disturbed in the absence of manifest error. *Id.* at 593.

The statutory guidelines for calculating child support are set forth in La. R.S. 9:315 to 9:315.20. *State Dep't of Children & Family Servs. in Interest of E.G., II v. Jones*, 14-918 (La. App. 5 Cir. 4/15/15), 170 So.3d 297, 299. Under La. R.S. 9:315(5)(b), for purposes of child support calculations, income includes potential income of a voluntarily unemployed or underemployed party. *Rutland v. Rutland*,

13-70 (La. App. 5 Cir. 7/30/13), 121 So.3d 776, 781; *Sequeira v. Sequeira*, 04-433 (La. App. 5 Cir. 11/30/04), 888 So.2d 1097, 1105, *writ denied,* 05-350 (La. 4/29/05), 901 So.2d 1065. Thus, if a party is voluntarily unemployed or underemployed, child support must be based on a determination of his or her income earning potential. La. R.S. 9:315.11. The party alleging the other is underemployed has the burden of proving that fact. *See Nair v. Nair*, 24-220 (La. App. 5 Cir. 12/20/24), -- So.3d --, 2024 WL 5182133 at *7.

> In determining the party's income earning potential, the court may consider the most recently published Louisiana Occupational Employment Wage Survey. In determining whether to impute income to a party, the court's considerations shall include, to the extent known, all of the following:
>
> (a) Assets owned or held by the party.
> (b) Residence.
> (c) Employment and earnings history.
> (d) Job skills.
> (e) Educational attainment.
> (f) Literacy.
> (g) Age and health.
> (h) Criminal record and other employment barriers.
> (i) Record of seeking work.
> (j) The local job market.
> (k) The availability of employers willing to hire the noncustodial parent.
> (l) Prevailing earnings level in the local community.
> (m) Other relevant background factors in the case.

La. R.S. 9:315.11 A.

When determining whether a spouse is underemployed for the purpose of calculating a child support obligation, the court shall consider that spouse's earning capacity in light of all circumstances. *Lowentritt v. Lowentritt*, 11-703 (La. App. 5 Cir. 3/13/12), 90 So.3d 1081, 1085. Whether a party is voluntarily under/unemployed with respect to calculating child support is a question of good faith of the party to be cast with paying the child support obligation. *Id*. "'Voluntary underemployment is a fact-driven consideration. The trial court has wide discretion in determining the credibility of witnesses and its factual

determinations will not be disturbed on appeal absent a showing of manifest error.'" *Dugué*, 316 So.3d at 175-76 (internal citation omitted).

An award of child support shall be retroactive to the date of judicial demand, except for good cause shown. La. R.S. 9:315.21; *State, Dep't of Soc. Servs. in Interest of P.B.*, 12-838 (La. App. 5 Cir. 4/24/13), 114 So.3d 1161, 1167, *writ denied sub nom. State Dep't of Soc. Servs. in Interest of P.B.*, 13-1193 (La. 9/13/13), 120 So.3d 698.

Upon review, we find the district court's findings and judgment are substantiated by the record. Philip earned over $140,000 the last year that he worked for W.R. Grace. He was fired from its plant for sleeping on the job. The trial court found that Philip was in good health and not physically or mentally incapacitated, had over 20 years of experience working in plants, literate, and without a criminal record. Both his and Danielle's testimony supports the trial court's finding that he "chose not to pursue opportunities commensurate with his full earning capacity."

Moreover, Danielle testified that her ex-husband withdrew money from the family's life savings to maintain the lifestyle they enjoyed before his termination, and they also lived off of insurance proceeds issued to reimburse them for damages sustained as a result of Hurricane Ida and their 401K. She did not agree with her husband's decision to change careers instead of pursuing opportunities at other plants. She filled out an application for him to work at another plant with her best friend, which she testified Philip did not submit for consideration. Danielle was found by the trial court to have a monthly income of $6,000 for purposes of calculating the child support obligation.

Philip testified that his former schedule at the plant required him to work alternating blocks of day and night shifts. He averaged over 800 hours of overtime most years and his schedule caused him to miss birthdays and holidays. He was

fired for falling asleep in his chair. He did apply for a job at Air Products, but received a denial letter. He admitted that Danielle did not agree with his decision not to work at plants anymore and averred that no other plants would hire him based on the reason for his discharge. He obtained a mortgage license, seeking a career change. At the time of trial, Philip was earning an average of $2,700 a month in commission selling homeowner's casualty and property insurance.

Philip did not pay child support while the divorce was pending, but he testified that he paid the mortgage and utilities for the family home. Danielle's counsel asked how he intended to support himself and his children going forward, considering he only made $11,000 in the eight months prior to trial, according to the evidence he provided. He replied that he took money out of his 401K to fix the house for the children, as waiting on insurance money was not an option. Philip intended for the family to live off of the $65,000 the family received from the insurance company in February until the insurance company business picked up. He testified that he used his half of the insurance proceeds to pay the household expenses, pursuant to the interim spousal support order; Danielle withdrew the other half of the proceeds from their joint bank account in March 2023. He also advised that he paid over $24,000 on the mortgage[2]. Danielle stated that her then-current monthly expenses were $10,000. Counsel then asked Philip a second time how he planned to pay for his and his family's expenses. He replied: "to be reimbursed on everything that I've paid since March would help out tremendously. At least half." He stated again that "[t]he agreement was to use the insurance money to further along my new career" and "the plan was for Danielle to get the full-time job she got to help pay for things" until his commission-based earnings

---

[2] As of April 17, 2023, the mortgage was 137 days delinquent, and five payments of $1,834.50, plus one payment of $1,862.39 were required to make the account current.

selling insurance were comparable to what he earned at the plant – he asserted that it should take three years.

Upon review of the record, we find that the district court did not err or abuse its discretion in finding that Philip was voluntarily underemployed, and imputing to him a monthly income of $11,900 to calculate the child support award. It is undisputed that Philip was terminated from his position as a process operator at W.R. Grace due to his own fault. While testifying, both Danielle and Philip acknowledged that Danielle was not on board with his plan to change careers. Both of the parties' testimony support the court's finding that Philip's efforts to find employment with compensation commensurate with his former work as a process operator were "at best, minimal."

When a parent voluntarily terminates his or her employment, the child support obligation may be reduced if the obligor parent can show that (1) a change in circumstances occurred; (2) the voluntary change is reasonable and justified; (3) the parent is in good faith and not attempting to avoid his or her alimentary obligation; and (4) the action will not deprive the child of continued reasonable financial support. *State Dep't of Children & Family Servs. in Interest of E.G., II v. Jones*, 14-918 (La. App. 5 Cir. 4/15/15), 170 So.3d 297, 299. The transcript and record clearly provide a basis for finding that Philip's career change was not reasonable or justified under the circumstances; and it was not proven that he would be able to provide his children, or himself, for that matter, with continued reasonable finance support. *See* La. R.S. 9:315.11; *but see Rutland*, 121 So.3d 776, 782 (where this Court affirmed the trial court judgment finding that the defendant was voluntarily underemployed).

Further, after Danielle obtained employment in an effort to maintain the same lifestyle the family enjoyed for the majority of their marriage, both parties acknowledged that it was still necessary to use retirement income, insurance

proceeds, and credit in order to cover their expenses before and after their separation. Courts are authorized to examine the standard of living and assets of the obligor parent both prior and subsequent to the child support order to determine the obligor's actual income if the amount claimed as income is inconsistent with the obligor's lifestyle. *See* La. R.S. 9:315.1.1(A)(3). Both children attended private school at the time of trial; the older child had a scholarship. Both children were on the school's wrestling team, and also wrestled year-round with Team Louisiana. The younger child played with an elite travel soccer team in the past. The older child has his own vehicle.

The record also includes several months of credit card statements addressed to Philip. It appears the family used the card to pay for various household and travel expenses before and after he lost his job and after the couple separated. The record also includes several statements from the Triches' joint bank account -- one statement shows that $65,000 from Fidelity Investments was deposited into the former couple's checking account about a year before Philip lost his job. Philip also testified that he withdrew $96,000 from his retirement account in 2022 to cover household expenses, and that he was running out of money. Courts have the discretion to include funds from capital gains, pensions, and annuities as income in the year in which they are received, or distribute the funds over multiple years if the funds are non-recurring. Monica Hof Wallace, *A Primer on Child Support in Louisiana*, 69 Loy. L. Rev. 131, 160 (2022), *citing Robichaux v. Robichaux*, 04-162 (La. App. 3 Cir. 6/2/04), 879 So.2d 279, 283-84.

Philip also testified that he stayed with family rent-free for several months following his separation from his wife and began living with a friend for $1,000 a month a few months before trial. The benefits a party derives from sharing expenses with family, friends, or a subsequent spouse, *may* be included as income to the extent such income directly reduces that party's actual expenses. *See* La.

R.S. 9:315(C)(5)(c). The word "may" is permissive and leaves within the trial court's discretion whether or not to consider benefits of expense-sharing. This decision will not be disturbed absent an abuse of discretion. *Hutto v. Kneipp*, 627 So.2d 802, 808 (La. App. 2d Cir. 1993).

Considering the foregoing, we find that the district did not abuse its discretion when it found that Philip was voluntarily underemployed and imputed income to him for the purpose of determining the parties' child support obligation. Philip cannot use his career change to justify a reduction in his child support obligation when 1) he was at fault for his termination from his position as a process operator which allowed him to care for his family; 2) he did not make a good faith effort to find other employment that would allow him to meet his obligations; and 3) there was no compelling reason for him to attempt to change careers at the time and in the manner he did. *See Anderson*, 96 So.3d at 1282; *Hutto*, 627 So.2d at 805.

### Interim Spousal Support Award

The standard of review for determining the amount of spousal support is one of abuse of discretion. *McClanahan*, 169 So.3d at 595-96, *citing Thibodeaux v. Thibodeaux,* 95-671 (La. App. 5 Cir. 1/30/96), 668 So.2d 1269, 1272, *writ not considered,* 96-0549 (La. 4/19/96), 671 So.2d 930. To substantiate reversal, the appellate court must find from the record that there is no reasonable factual basis for the finding of the trial court and that the record establishes that the finding is clearly wrong or manifestly erroneous. *Larson v. Larson*, 16-695 (La. App. 5 Cir. 10/25/17), 229 So.3d 1043, 1049.

A spouse may be awarded an interim spousal support allowance based on the needs of that spouse, the ability of the other spouse to pay, and the standard of living of the spouses during the marriage. La. C.C. art. 113; *Saacks v. Saacks*, 05-365 (La. App. 5 Cir. 9/26/06), 942 So.2d 1130, 1138. Interim spousal support is an

allowance awarded to a claimant spouse to help sustain the same style or standard of living that he or she enjoyed while residing with the other spouse, pending the litigation of the divorce. *Lowentritt*, 90 So.3d at 1087. Absent a pending demand for final spousal support, an award of interim spousal support shall terminate upon the rendition of a judgment of divorce. La. C.C. art. 113; *Saacks*, *supra*. The spouse seeking interim spousal support bears the burden of proving his or her entitlement to such. *Id.*, *citing Clark v. Clark,* 34,314 (La. App. 2 Cir. 11/1/00), 779 So.2d 822, 825, *writ denied,* 00-3196 (La.1/12/01), 781 So.2d 563.

The needs of the claimant spouse is defined as "the total amount sufficient to maintain her in a standard of living comparable to that enjoyed by her prior to the separation limited only by the husband's ability to pay." *Larson*, 229 So.3d at 1048. Interim spousal support is awarded retroactive to the date of the petition for spousal support. La. R.S. 9:310 A. *Id.* A trial court is afforded much discretion in determining an award of interim spousal support, and that award may not be disturbed absent a clear abuse of discretion. *Id.*, *citing Lowentritt*, 90 So.3d at 1086.

> As to interim spousal support specifically, an "abuse of discretion will not be found if the record supports the trial court's conclusions about the means of the payor spouse and his or her ability to pay." Factual findings shall not be set aside absent manifest error. *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989). To substantiate reversal, the appellate court must find from the record that there is no reasonable factual basis for the finding of the trial court and that the record establishes that the finding is clearly wrong or manifestly erroneous.

*Id.* at 1049 (internal citations omitted). When a spouse is awarded a judgment of divorce pursuant to La. C.C. art. 103(2), (3), (4), or (5), that spouse is presumed to be entitled to final periodic support. La. C.C. art. 112(C). Nevertheless, when support is awarded after a judgment of divorce is rendered pursuant to Article 103(4) or (5), the sum awarded may exceed one-third of the obligor's net income and may be awarded as a lump sum. La. C.C. art. 112(D). The petitioning spouse

bears the burden of proving his claims of physical abuse by a preponderance of the evidence. *Norton v. Norton*, 21-212 (La. App. 5 Cir. 12/22/21), 335 So.3d 371, 382. The trial court's factual determination regarding physical abuse by one spouse upon the other is entitled to great weight on appeal and will not be disturbed unless manifest error is shown. *Id.*

In the instant matter, the district court took judicial notice of its prior finding of physical abuse and granted Danielle a divorce pursuant to La. C.C. art. 103(4). Therefore, Danielle may be presumptively awarded final periodic support in an amount that exceeds one-third of Philip's monthly income. Thus, we find no error in the court's award of interim spousal support against Philip ordering him to continue to pay the $1,875 per month mortgage on the family home. Further, we take judicial notice of Danielle's request in the separate appeal currently pending between the parties at this court, 24-CA-369, *Triche v. Triche*[3], to be awarded attorney's fees and court costs pursuant to La. R.S. 9:314. As the court found Philip perpetrated domestic abuse against Danielle, we grant her motion, award her attorney fees, and cast the costs of appeal against Philip.

### *DECREE*

Considering the foregoing, the district court's December 1, 2023 judgment awarding child support and interim spousal support is affirmed. Philip is ordered to pay Danielle's attorney fees and all other costs of this appeal.

**AFFIRMED**

---

[3] The court has since affirmed the district court's judgment granting Danielle a divorce under La. C.C. art 103(4) in appeal 24-CA-369.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **FEBRUARY 26, 2025** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 24-CA-370

**E-NOTIFIED**
29TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE LAUREN D. ROGERS (DISTRICT JUDGE)
MARK A. MARINO (APPELLANT)          RENEE L. SWANSON (APPELLEE)

**MAILED**
NO ATTORNEYS WERE MAILED